Filed 5/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re R.G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B290029 (Super. Ct. No. YJ39305) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.G.,<br><br>    Defendant and Appellant. | |

"Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code,[1] § 187, subd. (a).) Under prior California law, a defendant who aided and abetted a crime, the natural and probable consequence of which was murder, could be convicted not only of the target crime but also of the resulting murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed "for the criminal

---

[1] All unlabeled statutory references are to the Penal Code.

harms [the defendant] . . . naturally, probably, and foreseeably put in motion.' [Citations.]" (*Id*. at pp. 164-165, italics omitted.)

  In 2018, the Legislature enacted Senate Bill No. 1437 (Senate Bill 1437) to amend the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 redefined "malice" in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer "be imputed to a person based solely on [their] participation in a crime." (§ 188, subd. (a)(3).) The bill also added section 1170.95, which permits those convicted of murder under a natural and probable consequences theory to file a petition with the sentencing court to vacate the conviction and be resentenced. (§ 1170.95, subd. (a).) The issue presented here is whether section 1170.95's petitioning procedure applies to a juvenile, like R.G., whose murder allegation was sustained by the juvenile court on a natural and probable consequences theory prior to the enactment of Senate Bill 1437. We hold that it does.

  The juvenile court sustained an allegation that R.G. committed second degree murder (§§ 187, subd. (a), 189, subd. (b)). The court also found true allegations that a principal personally used a firearm, discharged a firearm, and discharged a firearm causing death during the commission of the murder (§ 12022.53, subds. (b), (c) & (d)), and that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). It declared R.G. a ward of the court, set his maximum term at 40 years to life, and ordered him committed to the Division of Juvenile Justice.

  R.G. contends the juvenile court's true finding on the murder allegation must be reversed because Senate Bill 1437

applies retroactively to his case.  The Attorney General argues R.G. is ineligible for retroactive relief because he did not file a section 1170.95 petition.  (See *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147-1158 (*Anthony*); *People v. Martinez* (2019) 31 Cal.App.5th 719, 722-729 (*Martinez*).)  We affirm.

FACTUAL AND PROCEDURAL HISTORY

R.G. and five other members of the 5-Deuce Hoover Crips, a criminal street gang in Los Angeles, pulled their two cars behind a car stopped at a convenience store in a rival gang's territory.  R.G., Semaj Cathey, and Donovan Kushner got out of their car and approached the pinned-in car to see if its occupants were rival gang members.  They then got back into their car and left.

R.G. knew there was a gun on the floorboard of their car.  While Cathey was driving him home, Kushner said they should "slide through" the rival gang's territory again.  When they saw E.L. cross the street, Kushner jumped out of the car and asked him if he was in a gang.  R.G. started to get out of the car, too, thinking they were going to assault E.L., but Cathey told him to stay put.

As E.L. ran from Kushner, Kushner shot him several times with the gun from Cathey's car.  When Kushner got back into the car, he said E.L. had a "blue rag," indicating he was a rival gang member.  Cathey sped away, leaving E.L. to die at the scene.

The prosecution charged R.G., Cathey, and Kushner with E.L.'s murder.  It argued R.G. was liable based on three theories:  direct aiding and abetting, conspiracy, and natural and probable consequences.  The juvenile court rejected the aiding and abetting and conspiracy theories, but found that R.G. was

3

liable for E.L.'s murder because the shooting was a reasonably foreseeable consequence of the gang assault in this case. (See *People v. Medina* (2009) 46 Cal.4th 913, 922.)

DISCUSSION

R.G. contends the juvenile court's finding that he committed second degree murder must be reversed because Senate Bill 1437—which eliminated the natural and probable consequence theory of murder that provided the basis for the court's finding—applies retroactively to his case. The Attorney General argues R.G. is ineligible for relief because he did not file a section 1170.95 petition with the juvenile court. (See *Anthony*, *supra*, 32 Cal.App.5th at pp. 1147-1158; *Martinez*, *supra*, 31 Cal.App.5th at pp. 722-729.) *Anthony* and *Martinez* persuasively demonstrate why Senate Bill 1437 does not apply retroactively on direct appeal and why a defendant convicted of murder on a natural and probable consequences theory must instead file a section 1170.95 petition to obtain relief. We agree with their analyses.

But both cases' holdings turned on the availability of section 1170.95's petitioning mechanism to obtain the relief promised in Senate Bill 1437. (*Anthony*, *supra*, 32 Cal.App.5th at pp. 1151-1153; *Martinez*, *supra*, 31 Cal.App.5th at pp. 727-728.) Whether *Anthony*'s and *Martinez*'s rationales apply here thus hinges on whether a juvenile whose murder allegation was sustained by a juvenile court may file a section 1170.95 petition. R.G. contends the plain language of section 1170.95 prevents him from doing so. The Attorney General argues to the contrary.

The applicability of section 1170.95 to juvenile offenders presents an issue of statutory interpretation for our independent review. (*People v. Tran* (2015) 61 Cal.4th 1160,

4

1166.)  Our fundamental task is to ascertain the Legislature's intent when it enacted the statute.  (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)  We begin with the statute's words, giving them their plain, commonsense meanings.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  We construe the words in context of related statutes, harmonizing them whenever possible.  (*Ibid*.)  We presume the Legislature "was aware of existing related laws" when it enacted section 1170.95, and that it "intended to maintain a consistent body of rules."  (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199.)  We also presume the Legislature was aware of judicial construction of those laws and that it intended the same construction to apply to related laws with identical or substantially similar language.  (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785 (*Moran*).)

Section 1170.95 uses terminology not generally applicable in juvenile proceedings:  "superior court," "complaint," "information," "indictment," "plea," "trial," "conviction," and "sentence."[2]  (See *People v. Vela* (2018) 21 Cal.App.5th 1099,

---

[2] In full, section 1170.95 states:

"(a) A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.

"(b)(1) The petition shall be filed with the court that sentenced the petitioner and served by the petitioner on the district attorney, or on the agency that prosecuted the petitioner, and on the attorney who represented the petitioner in the trial court or on the public defender of the county where the petitioner was convicted. If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition. The petition shall include all of the following:

"(A) A declaration by the petitioner that [they are] eligible for relief under this section, based on all the requirements of subdivision (a).

"(B) The superior court case number and year of the petitioner's conviction.

"(C) Whether the petitioner requests the appointment of counsel.

"(2) If any of the information required by this subdivision is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.

"(c) The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that [they are] entitled to relief, the court shall issue an order to show cause.

"(d)(1) Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence. This deadline may be extended for good cause.

"(2) The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have [their] murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.

"(3) At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.

7

1104-1105 (*Vela*) [discussing differences between criminal and juvenile proceedings].)  But the presence of those terms "cannot be dispositive of the question whether the [statute] applies to juvenile wards." (*In re Jovan B.* (1993) 6 Cal.4th 801, 812 (*Jovan B.*).)  Instead, we must look to the "broader context to expand upon the clear language chosen by the Legislature." (*In re Derrick B.* (2006) 39 Cal.4th 535, 543.)

Part of that broader context is Welfare and Institutions Code section 602.  That section premises a juvenile court's jurisdiction over a juvenile offender on the violation of a criminal law.  (Welf. & Inst. Code, § 602, subd. (a).)  Criminal laws are, in large part, contained in the Penal Code.  When Senate Bill 1437 amended section 188 to restrict the natural and probable consequences doctrine as it relates to murder, that amendment became applicable to juveniles pursuant to Welfare

---

The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.

"(e) If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose.

"(f) This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner.

"(g) A person who is resentenced pursuant to this section shall be given credit for time served.  The judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence."

8

and Institutions Code section 602.  (See *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1224 (*Alejandro N.*), disapproved on another ground by *In re C.B.* (2018) 6 Cal.5th 118, 130 (*C.B.*).)  Section 1170.95 pertains to the same doctrine.  It would be absurd if statutory changes on the same subject matter in the same bill were not all equally applicable to juvenile offenders.  (*Id*. at pp. 1224-1225.)

Moreover, Welfare and Institutions Code section 602 has been in force since 1961.  Since that time, a juvenile court's jurisdiction over a juvenile offender has been premised on the violation of a criminal law.  (Stats. 1961, ch. 1616, § 2, p. 3472 ["Any person under the age of 21 years who violates any law of this state or of the United States or any ordinance of any city or county of this state . . . is within the jurisdiction of the juvenile court"].)  We presume the Legislature was aware of this premise when it enacted Senate Bill 1437, and that it understood that the bill's changes to section 188 would apply to juvenile offenders.  There is no reason that presumption would not also extend to a petitioning procedure relating to the same criminal laws.  (*Alejandro N.*, *supra*, 238 Cal.App.4th at p. 1225.)

Welfare and Institutions Code section 726 is also part of the broader context.  In 1976, the Legislature adopted the Determinate Sentencing Act (DSA) to replace the state's indeterminate sentencing system.  (*Jovan B.*, *supra*, 6 Cal.4th at pp. 816-817.)  Over the next two years, legislators amended Welfare and Institutions Code section 726 to make clear that the DSA sets the maximum duration of a juvenile offender's term of confinement.  (*Jovan B.*, at pp. 818-819.)  To that end, subdivision (d)(1) of that section provides that a juvenile "may not be held in physical confinement for a period in excess of the maximum term

9

of imprisonment [that] could be imposed upon an adult convicted of the offense or offenses [that] brought . . . the [juvenile] under the jurisdiction of the juvenile court."

Deeming section 1170.95 inapplicable to juvenile offenders would undermine Welfare and Institutions Code section 726. Suppose, for example, that an adult and a juvenile participated in an assault resulting in a death. Each was found to have committed murder on a natural and probable consequences theory. Neither was the actual killer, and neither harbored malice aforethought. Each would have been ordered confined for a term of 15 years to life. (§ 190, subd. (a).)

Now suppose further that the adult successfully petitioned to have their murder conviction redesignated assault with force likely to cause great bodily injury pursuant to section 1170.95. The adult's new maximum term of imprisonment would be four years. (§ 245, subd. (a)(4).) But if the juvenile were unable to use section 1170.95's petitioning procedure, their term of confinement for committing the same act would remain 15 years to life. That disparity violates the "obvious purpose of the 1976 and 1977 amendments to Welfare and Institutions Code section 726": "'treat[ing] adult and juvenile offenders on equal footing as far as the maximum duration of their incarceration is concerned[.]' [Citation.]" (*Jovan B.*, *supra*, 6 Cal.4th at p. 819, alterations omitted.)

"The Legislature cannot have anticipated that in order to preserve this equality over time, it would be forced to amend [Welfare and Institutions Code] section 726 each and every time it altered the DSA." (*Jovan B.*, *supra*, 6 Cal.4th at p. 819.) But R.G.'s interpretation of section 1170.95 would require just that. We will not foist upon the Legislature a statutory

10

interpretation that would require it to "to worry whether each new DSA amendment was so significantly different from the 1977 scheme that a specific amendment to Welfare and Institutions Code section 726 was also necessary." (*Id*. at pp. 819-820.)

The applicability of section 1170.18 to juvenile offenders is instructive. Adopted by voters in 2014, section 1170.18 permits a defendant serving a sentence for a felony conviction to petition the trial court to be resentenced to a misdemeanor term. (*People v. Page* (2017) 3 Cal.5th 1175, 1179.) Like section 1170.95, "[n]othing in the text of section 1170.18 explicitly applies to juveniles." (*C.B.*, *supra*, 6 Cal.5th at p. 125.) But considered in context of the provisions of the Welfare and Institutions Code cited above, the *Alejandro N.* court determined that section 1170.18 permits a juvenile serving a felony commitment to petition the juvenile court to recommit them for a misdemeanor term (*Alejandro N.*, *supra*, 238 Cal.App.4th at pp. 1224-1226)—a holding our Supreme Court has cited with approval (*C.B.*, at p. 125). We presume the Legislature was aware of *Alejandro N.* when it enacted section 1170.95, and thus saw no need to amend the Welfare and Institutions Code to specify that section 1170.95's analogous petitioning procedure applies to juveniles. (*Moran*, *supra*, 40 Cal.4th at p. 785; see also *In re E.G.* (2016) 6 Cal.App.5th 871, 882 [Welfare and Institutions Code section 726 "obviates the need for each Penal Code provision to . . . expressly indicate its applicability to juveniles"].)

Permitting juvenile offenders to benefit from section 1170.95's petitioning procedure also fits into the broader context of the juvenile law's underlying purpose. The primary purpose of a juvenile commitment proceeding is rehabilitation, not

11

punishment.  (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 5-6; see Welf. & Inst. Code, § 202, subd. (b) [punishment must be "consistent with the rehabilitative objectives" of the juvenile court law].)  That the Legislature enacted section 1170.95 when "there had been a sea change in penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders" (*Vela*, *supra*, 21 Cal.App.5th at p. 1106) suggests that legislators determined that juveniles deemed to have committed murder on a natural and probable consequences theory, like their adult counterparts, were being committed for terms more severe than their culpability levels required.

R.G.'s reliance on *In re Joseph B.* (1983) 34 Cal.3d 952 (*Joseph B.*) and *In re Antwon R.* (2001) 87 Cal.App.4th 348 (*Antwon R.*) is misplaced.  In *Joseph B.*, at page 960, our Supreme Court determined that section 1237.5's requirement that a defendant obtain a certificate of probable cause to appeal after a plea does not apply to juveniles.  The court relied, in part, on section 1237.5's use of language that does not apply in juvenile proceedings.  (*Id.* at p. 955.)  But it also read the statute in context of Welfare and Institutions Code section 800, which requires *only* the filing of a notice of appeal to perfect a juvenile appeal.  (*Id.* at pp. 955-956.)  Moreover, section 1237.5 was in effect when the Legislature amended Welfare and Institutions Code section 800.  (*Id.* at p. 956.)  "The Legislature's failure to mention a certificate of probable cause requirement in [Welfare and Institutions Code] section 800 evidence[d] an intent that a notice of appeal [was] sufficient to initiate appellate review of any error arising during juvenile court proceedings."  (*Ibid.*)

Relying on *Joseph B.*, *Antwon R.*, *supra*, 87 Cal.App.4th at pages 350-352, determined that section 1237.1's

rules regarding appeals challenging the calculation of presentence custody credits do not apply to juveniles. Like *Joseph B.*, the *Antwon R.* court noted that section 1237.1 uses language inapplicable in juvenile proceedings. (*Id.* at pp. 350-351.) The court also read section 1237.1 in context of Welfare and Institutions Code section 800, which does not refer to section 1237.1's requirements. (*Id.* at pp. 351-352.)

The *Antwon R.* court further observed that the Legislature added section 1237.1 more than a decade after the Supreme Court's decision in *Joseph B.*, indicating that legislators intended for the *Joseph B.* court's interpretation of section 1237.5 to apply to section 1237.1. (*Antwon R.*, *supra*, 87 Cal.App.4th at p. 352.) It also noted that section 1237.1 is in title 9 of part 2 of the Penal Code. (*Ibid.*) That title applies only to an appeal in a felony case, "'a criminal action in which a felony is charged.'" (*Ibid.*) Because a juvenile proceeding is not a "'criminal action,'" section 1237.1 does not apply. (*Ibid.*)

Like sections 1237.1 and 1237.5, section 1170.95 uses language generally inapplicable in juvenile proceedings. And like sections 1237.1 and 1237.5, section 1170.95 must be read in context of relevant provisions of the Welfare and Institutions Code. But as set forth above, the provisions relevant here—Welfare and Institutions Code sections 602 and 726—specifically contemplate incorporating substantive criminal laws and portions of the DSA into juvenile proceedings. (*Jovan B.*, *supra*, 6 Cal.4th at p. 816; *Alejandro N.*, *supra*, 238 Cal.App.4th at p. 1224.) Moreover, the Legislature added section 1170.95 three years after the *Alejandro N.* court interpreted similar provisions of section 1170.18, which indicates that legislators intended that a similar interpretation apply to both statutes. (*Moran*, *supra*, 40

13

Cal.4th at p. 785; see also *Antwon R.*, *supra*, 87 Cal.App.4th at p. 352.) Finally, unlike sections 1237.1 and 1237.5, section 1170.95 is in chapter 4.5 of title 7 of part 2 of the Penal Code. Numerous other provisions of that chapter apply in juvenile proceedings. (*Jovan B.*, at pp. 810-813 [§ 1170.1]; *Alejandro N.*, at pp. 1224-1226 [§ 1170.18]; see also §§ 1170.17 [sentencing of minor as an adult], 1170.19 [same].)

We accordingly hold that, where the juvenile court has sustained a murder allegation on a natural and probable consequences theory, a juvenile may, pursuant to the provisions of section 1170.95, petition the court to have that conviction vacated and the corresponding commitment (or other disposition) recalled. Because R.G. has not done so here, Senate Bill 1437 relief is premature. (*Anthony*, *supra*, 32 Cal.App.5th at p. 1158; *Martinez*, *supra*, 31 Cal.App.5th at p. 729.) We express no view on whether R.G. should be granted such relief if he files a section 1170.95 petition.

DISPOSITION

The juvenile court's order sustaining the allegation that R.G. committed second degree murder is affirmed.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


14

Christopher J. Smith, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Michael J. Wise and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.