Filed 12/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD RODRIGUEZ LARIOS,<br><br>    Defendant and Appellant. | F078759<br><br>(Super. Ct. No. VCF211993C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County. Gary L. Paden, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric Christoffersen and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Richard Rodriguez Larios appeals from an order denying a petition for recall of sentence and resentencing pursuant to Penal Code section 1170.95. (Statutory references are to the Penal Code unless otherwise stated.) This order is appealable pursuant to section 1237, subdivision (b), as an order after judgment affecting the substantial rights

of the defendant.  (See *Teal v. Superior Court* (2014) 60 Cal.4th 595, 600–601 [denial of petition for recall and resentencing appealable as order after judgment].)  The convictions upon which Larios had petitioned were three counts of attempted murder, which were final at the time he filed his petition.  Larios's counsel has raised no issue on appeal and asked this court for an independent review of the record to determine whether there are any arguable issues.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Larios's counsel advised Larios, as did this court, of his right to file a supplemental brief to bring to this court's attention any issue he believes deserves review.  (*People v. Kelly* (2006) 40 Cal.4th 106, 120.)  Larios filed a supplemental brief in which he challenges the applicability of the natural and probable consequences doctrine to his case, and he requests resentencing under section 1170.95.  After initial consideration of his arguments, this court requested briefing from counsel on the scope and applicability of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to the crime of attempted murder, and in particular, final convictions of attempted murder.  We directed counsel to discuss the recent cases of *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234 (*Munoz*) and *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*), which have addressed similar issues.  Although we find ourselves in fundamental disagreement with the *Lopez* and *Munoz* decisions on the scope and legal ramifications of Senate Bill 1437 as it pertains to attempted murder, we agree with their ultimate conclusion that section 1170.95 provides no relief for the crime of attempted murder.  Consequently, we affirm the trial court's order denying relief to Larios on his petition.

**PROCEDURAL AND FACTUAL HISTORY**

We grant Larios's request to take judicial notice, pursuant to Evidence Code section 452, subdivision (d), of the unpublished opinion in *People v. Larios* (Aug. 19, 2011, F059866) (*Larios I*).  This court summarized the relevant facts and judicial proceedings in *Larios I* as follows:

"… Larios and his codefendant Ronnie Zuniga were two of three Norteno occupants of a brown or tan Mercury Cougar automobile that stopped to get gas at a convenience store on Bardsley Avenue in Tulare. Already there at a gas pump was a black Nissan Maxima occupied by two Surenos, Irving Rodriguez and Juan Saucedo, and a friend of Rodriguez's since childhood, 17-year-old Stephanie G. After some staring or 'mad dogging' between the rival gang members at the gas pumps, and a brief verbal exchange between Norteno Zuniga and Sureno Saucedo when the two men went inside the store to pay for gas, the Cougar followed the Maxima when the Maxima drove away from the convenience store. A short distance away, approximately five gunshots were fired from the Cougar, at least four of which struck the Maxima. None of the bullets struck any of the three occupants of the Maxima, although Stephanie G. received cuts from shattered window glass.

"A first trial ended in a mistrial when the jury could not reach a verdict. In the second trial, the subject of this appeal, a jury found both Larios and Zuniga guilty of three counts of premeditated attempted murder (Pen. Code, §§ 664/187, subd. (a)) and one count of shooting at an occupied motor vehicle (§ 246). The jury also found that the crimes were committed for the benefit of a street gang (§ 186.22, subd. (b)(4)) and that a principal personally discharged a firearm in the commission of each crime (§ 12022.53, subds. (c) and (e)(1)). Each defendant was sentenced to a term of 54 years to life." (*Larios I*, *supra*, F059866, fn. omitted.)

In *Larios I*, this court directed the trial court to strike the 20-year section 12022.53 enhancement imposed and stayed on count 4, but in all other respects, affirmed.

The remittitur on the appeal in *Larios I* issued on November 3, 2011.

On January 2, 2019, Larios filed a petition seeking relief under recently enacted section 1170.95, in the Tulare Superior Court. In a preprinted form request for resentencing petition, Larios alleged he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and he could not now be so convicted because of newly effective changes to sections 188 and 189. The petition further alleged he was eligible for resentencing because he was not the actual killer; he did not intend to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; he was not a major participant in the felony or he did not act with reckless indifference to human

3.

life during the course of the crime or felony; and the victim of the murder was not a peace officer in the performance of his or her duties.

On January 9, 2019, the trial court summarily denied the petition, stating Larios was convicted of three counts of attempted murder, in violation of sections 664 and 187, and was "unable to establish a prima facie basis of eligibility for relief."

## DISCUSSION

In his brief, Larios emphasizes that he was not the shooter, there was no evidence at trial that he knew or should have known that another person in the vehicle was armed with or was going to use a firearm, and there was no evidence that he aided or abetted in the commission of this crime. To the extent Larios is asking us to reconsider the sufficiency of the evidence as it pertains to his convictions, that time has long passed. As for his request that we grant his appeal for resentencing pursuant to section 1170.95, we have sought the input of counsel by directing them to answer the following questions in supplemental briefing:

> "1. Does Senate Bill 1437 abrogate the natural and probable consequences doctrine as a theory of accomplice liability for crimes requiring the mental state of express malice aforethought?

> "2. If the answer to the first question is yes, does Senate Bill 1437 provide or contemplate an exception for the crime of attempted murder?

> "3. If the current law prohibits accomplice liability for attempted murder under the natural and probable consequences doctrine, does Penal Code section 1170.95 provide relief to persons convicted of attempted murder, whose convictions are final, as in the case of appellant herein?"

**A.** **Does Senate Bill 1437 abrogate the natural and probable consequences doctrine as a theory of accomplice liability for crimes requiring the mental state of express malice aforethought?**

Counsel for Larios observes, with no elaboration, that the court in *Lopez* "held that Senate Bill 1437 eliminated liability for murder under the natural and probable consequences doctrine." The People, more directly, answer this question "No." The People argue the history of Senate Bill 1437 and the plain language of the statutes

amended by the legislation support this answer. Relying on both *Lopez* and *Munoz*, the People conclude the new legislation "abrogated the natural and probable consequences doctrine as a theory of accomplice liability for murder and nothing else."

We disagree with the People's conclusion, and in the process, disagree with our colleagues in *Lopez* and *Munoz*.

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) This was accomplished through amendments to sections 188 and 189. It also added section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2–4.)

As to the natural and probable consequences doctrine, at issue here, Senate Bill 1437 added a provision to section 188 concerning the mens rea for accomplice liability as follows: "(3) Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.) "Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*In re R.G.* (2019) 35 Cal.App.5th 141, 144; accord, *Lopez, supra*, 38 Cal.App.5th at p. 1103, rev. granted; *Munoz, supra*, 39 Cal.App.5th at p. 749, rev. granted.) These changes reflect the Legislature's intent that "[a] person's culpability for murder … be premised upon that person's own actions and

subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g); see *People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147.)

Based on the new statutory language in section 188 and the cases cited above, we conclude the natural and probable consequences doctrine no longer may support a murder conviction.

**B.      Does Senate Bill 1437 provide or contemplate an exception for the crime of attempted murder?**

The applicability of Senate Bill 1437 to the crime of attempted murder presents an issue of statutory interpretation for our independent review. (See *People v. Tran* (2015) 61 Cal.4th 1160, 1166 ["We review de novo questions of statutory construction"]; *In re R.G.*, *supra*, 35 Cal.App.5th at p. 146.) Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequences of which was attempted murder or murder, could be convicted of not only the target crime but also of the resulting nontarget crime of attempted murder or murder, but not first degree murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161, 166; *In re R.G.*, *supra*, at p. 144.)

"'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense.'" (*People v. Chiu*, *supra*, 59 Cal.4th at p. 164.) The *Chiu* court further explained:

> "[S]ection 31 provides in relevant part that '[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission … are principals in any crime so committed.' It does not expressly mention the natural and probable consequences doctrine. Where the statutory language is vague, 'the statutory definition permits, even requires, judicial interpretation.' (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) We may, as a court, determine the extent of aiding and abetting liability for a particular offense, keeping in mind the rational function that

6.

the doctrine is designed to serve and with the goal of avoiding any unfairness which might redound from too broad an application. [Citations.]" (*People v. Chiu*, *supra*, 59 Cal.4th at p. 164.)

Excepting the felony-murder rule,[1] an accomplice may be convicted of a crime under one of two alternative theories: direct aiding and abetting liability and the natural and probable consequences doctrine. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) "[O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator." (*Id.* at p. 1118.) It follows that if malice is an element of a charged offense, accomplice liability under the natural and probable consequences doctrine necessarily entails the imputation of malice. (See *McCoy*, at pp. 1117–1118; *People v. Lee* (2003) 31 Cal.4th 613, 623–624; see also *People v. Prettyman* (1996) 14 Cal.4th 248, 259 ["'We euphemistically may impute the actions of the perpetrator to the accomplice by "agency" doctrine; in reality, we demand that she who chooses to aid in a crime forfeits her right to be treated as an individual'"].) However, as amended by Senate Bill 1437, section 188 plainly states: "*Malice shall not be imputed to a person based solely on his or her participation in a crime.*" (*Id.*, subd. (a)(3), italics added.)

Pursuant to the above reasoning, we conclude Senate Bill 1437 precludes any imposition of vicarious liability under the natural and probable consequences doctrine if the charged offense requires malice aforethought. Because malice cannot be imputed to a defendant who aids and abets a target offense without the intent to kill, the natural and probable consequences doctrine is no longer a viable theory of accomplice liability for attempted murder. Put differently, since "implied malice cannot support a conviction of an *attempt* to commit murder" (*People v. Bland*, *supra*, 28 Cal.4th at p. 327; see fn. 1,

---

[1]Senate Bill 1437's changes to section 189 are not at issue because "California has no crime of attempted felony murder." (*People v. Billa* (2003) 31 Cal.4th 1064, 1071, fn. 4, citing *People v. Bland* (2002) 28 Cal.4th 313, 328; accord, *People v. Brito* (1991) 232 Cal.App.3d 316, 321 ["California courts have consistently held that there are no crimes of attempted felony murder [or] attempted murder based on implied malice"].)

7.

*ante*), the current version of section 188 requires proof the aider and abettor acted with the intent to kill while aiding and abetting the target offense.

We acknowledge two of our sister courts have held Senate Bill 1437 does not affect the natural and probable consequences doctrine as it relates to attempted murder. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1102–1113, rev. granted; *Munoz*, *supra*, 39 Cal.App.5th at pp. 753–769, rev. granted.) However, we respectfully disagree with their analyses and conclusions. Here's why.

"The '"goal of statutory construction is to ascertain and effectuate the intent of the Legislature."' [Citation.] In approaching this task, we must first look at the plain and commonsense meaning of the statute because it is generally the most reliable indicator of legislative intent and purpose. [Citation.] If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." (*People v. Cochran* (2002) 28 Cal.4th 396, 400–401.) In other words, the plain meaning controls unless the words are ambiguous. (*People v. Costella* (2017) 11 Cal.App.5th 1, 6.) "'If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.'" (*Ibid.*) We may "'examin[e] the context in which the language appears and adopt[] the construction which best serves to harmonize the statute internally and with related statutes.'" (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126.)

The *Lopez* opinion acknowledges that "Senate Bill 1437 eliminates aider and abettor liability for murder under the natural and probable consequences doctrine" (*Lopez*, *supra*, 38 Cal.App.5th at p. 1092, rev. granted), but it suggests the imposition of vicarious liability for attempted murder under the same doctrine is not based on imputed malice. (*Id.* at p. 1106.) The logic of this argument escapes us.[2] We are also

---

[2] "'The word "impute" … means to bring into the reckoning, to attribute or to ascribe. It is sometimes used to attribute vicariously,—to ascribe as derived from another.'" (Black's Law Dict. (11th ed. 2019) p. 908, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 605.)

unpersuaded by *Lopez*'s reliance on the absence of any reference to "attempted murder" in Senate Bill 1437. (*Lopez*, at pp. 1103–1105.) The omission is meaningless when one considers that sections 187, 188, and 189 have never included that term. Yet we look to these statutes in conjunction with section 21a, which explains the law of attempt, to define attempted murder.

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Murder is defined as "[t]he unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) Express malice is synonymous with the intent to kill. (§ 188, subd. (a)(1); *People v. Gonzalez* (2012) 54 Cal.4th 643, 653; *People v. Moon* (2005) 37 Cal.4th 1, 29.) A criminal attempt "bears an extremely close relationship to the completed crime. Attempts, after all, are defined as incomplete efforts to commit a completed crime." (*People v. Fontenot* (2019) 8 Cal.5th 57, 64.) Attempted murder thus requires "the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Booker* (2011) 51 Cal.4th 141, 177–178.)

The Legislature is presumed to be aware of existing interpretations of statutory language when it amends a statute. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 461–462.) When the Legislature amended section 188 to state "[m]alice shall not be imputed to a person based solely on his or her participation in a crime" (*id.*, subd. (a)(3)), it made no exceptions for attempted murder, which indisputably requires express malice. (*People v. Booker*, *supra*, 51 Cal.4th at p. 178.) By failing to exclude attempted murder from the ambit of section 188, the Legislature must have intended for its provisions to apply to all crimes requiring express malice. We thus find the *Lopez* court's reasoning to be untenable. (See *Lopez*, *supra*, 38 Cal.App.5th at p. 1104, rev. granted ["Had the Legislature meant to bar convictions for attempted murder under the natural and probable consequences doctrine, it could easily have done so"].)

9.

The legislative intent to restrict the imputation of malice in prosecutions for both murder and attempted murder is demonstrated by the precise language used to amend section 188. Had the Legislature intended to confine its repudiation of the natural and probable consequences doctrine to murder, it could easily have said: "*Except for attempted murder*, malice shall not be imputed to a person based solely on his or her participation in a crime." (Italics added.) The same preposition, "except," appears in the preceding sentence to exclude felony-murder prosecutions from the scope of the provision. (§ 188, subd. (a)(3); cf. *Munoz*, *supra*, 39 Cal.App.5th at p. 757, rev. granted ["""When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.'" [Citation.]'"].) Because the crime of attempted murder is tethered to the murder statutes, i.e., it does not exist without them, there is no logical basis for applying section 188 to murder and treating the crime of attempted murder as being subject to an impliedly different and unspecified rule of law. Neither *Lopez* nor *Munoz* persuades us to conclude otherwise.

The foregoing analysis is buttressed by the California Supreme Court's recent observation that "courts impose a 'heightened intent requirement' for attempts … even when the completed crime requires a less demanding mental state" in order "[t]o ensure that only those whose intentions and actions made them a pronounced threat to accomplish what a given criminal statute prohibits may be found criminally liable." (*People v. Fontenot*, *supra*, 8 Cal.5th at p. 67.) "In effect, the higher bar serves as a bulwark against convicting someone of attempting to accomplish something he or she never set out to do." (*Id.* at pp. 67–68.) The Legislature codified this safeguard in section 21a by making "'*specific intent* to commit the [completed] crime'" a required element of attempt crimes. (*Fontenot*, at p. 68.)

For all these reasons, Senate Bill 1437's abrogation of the natural and probable consequences doctrine as stated in section 188, subdivision (a)(3) necessarily applies to attempted murder. To hold otherwise would ignore the plain language of the statute and

conflict with the underlying policy of the legislation.  As noted by our state Supreme Court, "where the natural-and-probable-consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy [than the principal offender]." (*People v. Lee, supra*, 31 Cal.4th at p. 624.)  Our interpretation of Senate Bill 1437 comports with its stated goal of ensuring a defendant's culpability is premised upon his or her own actions and subjective mens rea.  (Stats. 2018, ch. 1015, § 1, subds. (d), (g).)

**C.    If the current law prohibits accomplice liability for attempted murder under the natural and probable consequences doctrine, does section 1170.95 provide relief to persons convicted of attempted murder, whose convictions are final, as in the case of appellant herein?**

Senate Bill 1437 also added section 1170.95.  Newly enacted section 1170.95 permits those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (*Id.*, subd. (a).)  An offender may file a petition under section 1170.95 where all three of the following conditions are met:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)  A trial court receiving a petition under section 1170.95 "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).)  If the petitioner has made such a showing, the trial court "shall issue an order to show cause." (*Ibid*.)  The trial court must then hold a hearing "to

determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence."  (§ 1170.95, subd. (d)(1).)

The plain language of section 1170.95, subdivision (a) limits relief to persons "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court …."  No language in section 1170.95 references relief to persons convicted of attempted murder.  And, as noted in *Lopez*, the legislative history of Senate Bill 1437 supports the conclusion section 1170.95 was intended to apply only to persons convicted of murder:

> "There may well be sound policy reasons for the Legislature to adopt ameliorative provisions like those in Senate Bill 1437 for individuals charged with, or convicted of, attempted murder under the natural and probable consequences doctrine.  But the Legislature's decision to limit sentencing reform at this time to offenders in cases of murder is certainly rational.  First, the gap between a defendant's culpability in aiding and abetting the target offense and the culpability ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense is attempted murder or, in the prosecutor's discretion, aggravated assault.  The Legislature could have reasonably concluded reform in murder cases 'was more crucial or imperative.' …

> "Second, the process created in section 1170.95 for those convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate that conviction and to be resentenced is not cost free.  The staff of the Senate Appropriations Committee estimated, if 10 percent of the inmates eligible for relief under Senate Bill 1437 petitioned the courts for resentencing, additional court workload costs would approximate $7.6 million.  The committee's report expressed concern that this increase in workload 'could result in delayed court services and would put pressure on the General Fund to fund additional staff and resources.'  (Sen. Com. Appropriations Report, p. 3.)  Additional expenditures would also be required to transport petitioners in custody to and from court hearings.  (*Ibid.*)

> "In a world of limited resources, it is reasonable for the Legislature to limit the scope of reform measures to maintain the state's financial

12.

integrity.  [Citations.]" (*Lopez, supra*, 38 Cal.App.5th at pp. 1111–1112, fn. omitted, rev. granted; see *Munoz, supra*, 39 Cal.App.5th at pp. 753–760, rev. granted.)

We agree with the reasoning of *Lopez* and *Munoz* that the relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder.  The language and the legislative history of section 1170.95 support this conclusion.  And there is a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions and exclude attempted murder convictions based on judicial economy and the financial costs associated with reopening both final murder and final attempted murder convictions.  In light of this unambiguous language, Larios is categorically excluded from seeking relief through the section 1170.95 petitioning procedure for his attempted murder convictions, which have long been final.

**DISPOSITION**

The order is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
FRANSON, J.

13.