Filed 6/9/22  P. v. Deary-Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093753 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F04334) |
| v. | |
| RASHID DEARY-SMITH, | |
| Defendant and Appellant. | |

In 2015, defendant Rashid Deary-Smith was found guilty of, among other things, attempted murder and sentenced to prison.  In 2020, following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for

1

resentencing pursuant to Penal Code section 1170.95.[1]  The trial court denied the petition based on what it then deemed to be controlling authority standing for the proposition that individuals convicted of attempted murder, as opposed to murder, were not eligible for Senate Bill 1437 relief.  The court further concluded defendant failed to make the requisite prima facie showing.  Defendant appealed.  After the matter was initially fully briefed, we directed the parties to submit supplemental briefing on the effect, if any, of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, on defendant's appeal.

We shall reverse the order denying defendant's petition and remand for the trial court to issue an order to show cause and hold a hearing under section 1170.95, subdivision (d).  Senate Bill 775 makes clear defendants convicted of attempted murder are entitled to avail themselves of the changes effected by Senate Bill 1437.  Defendant's petition satisfied the prima facie showing required under section 1170.95, and nothing in his record of conviction establishes his petition lacks merit as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are quoted from the opinion of another panel of this court on defendant's first appeal from the judgment.  (*People v. Deary-Smith* (Apr. 3, 2019, C080821) [nonpub. opn.] (*Deary-Smith*).)

"Returning home from a night of karaoke, the girlfriend (the first victim) pulled her car into her garage and closed the garage door behind her.  Getting out of her car, two men, defendant and the accomplice, rushed her.  The men wore all black with face coverings.  Both had handguns:  Defendant, a .45-caliber pistol; the accomplice, a nine-millimeter handgun.

---

[1]  Further undesignated statutory references are to the Penal Code.

"The girlfriend raised her hands, pleading with them not to hurt her. One said, 'Shut up bitch,' and demanded she open the door connecting the garage to the house, while shoving her towards the door. Possibly because she was not moving fast enough, defendant hit her in the head with his gun, causing her to fall to the floor.

"The boyfriend (the other victim) was inside the house. Hearing the ruckus, he grabbed his .40-caliber gun, and partially opened the door to the garage. As he did, he was pushed back into the house and shot in the stomach. The boyfriend, however, was able to return fire, and shots were exchanged through the closed doorway connecting the house and the garage.

"During the battle, the girlfriend got into her car, drove through the closed garage door, and drove to a nearby pharmacy, waiting for police to arrive.

"The boyfriend got his shotgun from his bedroom, called 911, and went to the garage. He found defendant on the floor with a gunshot to his head. Zip ties were next to defendant (neither victim owned zip ties). Neither victim had ever seen defendant before.

"Responding officers found a loaded, semiautomatic handgun next to defendant. He was wearing black gloves and a sweatshirt with a pulled up hood. When rolled to his side, two more zip ties fell out of his pocket. Defendant's gun had not been fired.

"The accomplice went to the hospital for a gunshot to the leg. Defendant was also taken to the hospital." (*Deary-Smith, supra*, C080821, fn. omitted.)

"A jury found defendant guilty of attempted murder (§ 664/187, subd. (a); count 3), first degree burglary (§ 459; count 4), being a convicted felon in possession of a firearm (former § 12021, subd. (a)(1), Stats. 2011, ch. 15, § 501.5, eff. April 4, 2011; count 5), and two counts of attempted first degree robbery in an inhabited building (§ 664/211; counts 1 and 2). As to counts 1, 2, 3 and 4, it found defendant personally used a firearm. (§§ 12022.53, subd. (b) [counts 1, 2, & 3], 12022.5, subd. (a)(1) [count 4].)" (*Deary-Smith, supra*, C080821.) The trial court imposed an aggregate sentence of 21 years 8 months. On defendant's first appeal, among other things, we affirmed the

3

convictions of attempted murder and first degree burglary and reversed the two convictions of attempted first degree robbery.

On July 22, 2020, defendant filed a petition for resentencing pursuant to section 1170.95. Defendant asserted that he had been found guilty of attempted murder as an aider and abettor under the natural and probable consequences doctrine. He further asserted the evidence established he was not the principal, did not fire a weapon, and did not participate in planning to murder or attempt to murder anyone. Defendant asserted he was entitled to section 1170.95 resentencing following enactment of Senate Bill 1437. He further asserted Senate Bill 1437 applied to attempted murder convictions as well as murder convictions. Defendant appended a declaration in which he averred, among other things, that a complaint, information, or indictment had been filed against him that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; that, at trial, he was convicted of attempted murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of attempted murder due to changes made to sections 188 and 189, effective January 1, 2019. He further asserted he was not the actual shooter; he did not, with the intent to kill, aid, abet, or assist the actual shooter in the commission of attempted murder; he was not a major participant in the felony; and he did not act with reckless indifference to human life. He also requested the appointment of counsel.

The prosecution opposed and sought dismissal of defendant's petition, asserting that Senate Bill 1437 did not apply to attempted murder convictions. The prosecution also asserted defendant's petition failed to make a prima facie showing that the grounds for his conviction rested on the natural and probable consequences doctrine or the felony-murder rule.

The trial court denied defendant's petition. Based on what the court deemed to be controlling authority, the court concluded defendant was not eligible for section 1170.95

4

relief based on his conviction of attempted murder as opposed to murder. The court further concluded that, in any event, defendant had not made the requisite prima facie showing because he failed to demonstrate his jury was instructed on the natural and probable consequences doctrine. The court stated that its file did not include the jury instructions given at defendant's trial, and defendant had not included those instructions with his petition to support his prima facie showing.

DISCUSSION

I

*Murder and Senate Bill 1437*

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).) Prior to the enactment of Senate Bill 1437, "the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective January 1, 2019. Senate Bill 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieved this by amending sections 188 and 189.

Subdivision (a)(1) of section 188 defines express malice and subdivision (a)(2) defines implied malice. Following enactment of Senate Bill 1437, subdivision (a)(3) of section 188 now provides: "Except as stated in subdivision (e) of Section 189, in order to

5

be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Thus, following enactment of Senate Bill 1437, and where the felony-murder rule is not at issue, a person must act with malice aforethought to be convicted of murder. (§ 188, subd. (a)(3); see *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

Relevant to felony murder, section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [(defining first degree murder)] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

In addition to amending sections 188 and 189, Senate Bill 1437 also authorized, through newly enacted section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to sections 188 or 189. (See *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

## II

### *Attempted Murder Convictions and Senate Bill 775*

Prior to the enactment of Senate Bill 775, there was a split among the Courts of Appeal as to whether Senate Bill 1437 applied to attempted murder convictions. On January 1, 2022, Senate Bill 775 became effective and resolved the conflict. Senate Bill 775 "[c]larifies that persons who were convicted of attempted murder or manslaughter

6

under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

After the case was initially fully briefed, we directed the parties to provide supplemental briefing on the effect, if any, of Senate Bill 775 on defendant's appeal. Supplemental briefing was deemed completed on May 10, 2022. In his supplemental opening brief, defendant asserts Senate Bill 775 made clear that Senate Bill 1437 applies to attempted murder convictions, and that defendants with such convictions may petition for relief pursuant to section 1170.95. The Attorney General agrees that, following enactment of Senate Bill 775, the resentencing procedures in section 1170.95 are available to those convicted of attempted murder.

We agree defendant is entitled to avail himself of the benefits of the provisions of section 1170.95. Following the enactment of Senate Bill 775, it is clear that those convicted of attempted murder may be eligible for section 1170.95 relief.

III

*Prima Facie Showing on a Section 1170.95 Petition*

In his supplemental briefing, citing *Lewis, supra*, 11 Cal.5th at page 971, defendant asserts his petition was sufficient to make a prima facie showing, and therefore requests that we reverse and remand the matter with directions that the trial court issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (d). The Attorney General disagrees, asserting that, because the trial court made its determination prior to the issuance of *Lewis, supra*, 11 Cal.5th 952, "there has never been a determination that [defendant] has made a prima facie showing of entitlement to relief under the correct standards." Therefore, the Attorney General asserts the matter should be remanded to the trial court, which can then make the prima facie determination in the first instance. The Attorney General has not persuaded us there is any reason we should not reach the issue of whether defendant made a prima facie showing under the

7

applicable standards.  As we shall explain, we agree with defendant that his petition satisfied the prima facie showing requirement, and we will remand for the trial court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (d).

Subdivision (a) of section 1170.95 provides:  "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.  [¶]  (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

Subdivision (b) of section 1170.95 sets forth procedures for filing and service of the petition and what must be included in the petition, including, among other things, a "declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a)."  (§ 1170.95, subd. (b)(1)(A).) Subdivision (c) provides for further briefing by the parties after the filing of a petition in compliance with subdivision (b).  "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a

8

prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c).)

At the prima facie stage, "a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 974.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id*. at p. 971.) The " 'prima facie bar was intentionally and correctly set very low.' " (*Id*. at p. 972.) To determine whether the petitioner has made the requisite prima facie showing, the trial court may examine the petitioner's record of conviction. (*Id*. at pp. 970-971.) "Appellate opinions . . . are generally considered to be part of the record of conviction."[2] (*Id*. at p. 972.) If the court determines in its preliminary assessment that the petitioner would be entitled to relief if the petition's factual allegations were proved, the court must issue an order to show cause. (*Id*. at p. 971.) However, if the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings. (See *ibid*. [the "record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

---

[2] We grant the Attorney General's requests that we take judicial notice of our prior opinions on defendant's two previous appeals, *Deary-Smith, supra*, C080821, and *People v. Deary-Smith* (July 24, 2020, C090444) (nonpub. opn.). (See Evid. Code, §§ 452, subd. (d), 459.)

Defendant's petition satisfies the prima facie showing required. As stated in his petition, defendant asserted he had been found guilty of attempted murder as an aider and abettor under the natural and probable consequences theory. In his appended declaration, he asserted a charging instrument had been filed against him that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; that, at trial, he was convicted of attempted murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of attempted murder due to changes made to sections 188 and 189, effective January 1, 2019. (See § 1170.95, subd. (a).) He further asserted he was not the actual shooter; he did not, with the intent to kill, aid, abet, or assist the actual shooter in the commission of attempted murder; he was not a major participant in the felony; and he did not act with reckless indifference to human life.

In sum, Senate Bill 775 established that the changes effected by Senate Bill 1437, including the petitioning mechanism of section 1170.95, apply to convictions for attempted murder. Defendant filed a petition that satisfied the requisite prima facie showing. (See § 1170.95, subds. (a), (b).) Nothing in defendant's record of conviction establishes his petition lacks merit as a matter of law. (See *Lewis, supra*, 11 Cal.5th at p. 971.) Defendant is entitled to issuance of an order to show cause and a hearing on whether to vacate his attempted murder conviction and to recall sentence and resentence him on the remaining counts. (§ 1170.95, subds. (c), (d).)

10

DISPOSITION

The order denying defendant's petition for resentencing pursuant to section 1170.95 is reversed.  The matter is remanded with directions to issue an order to show cause and hold a hearing under section 1170.95, subdivision (d).


  /s/
HOCH, Acting P. J.


We concur:


  /s/
KRAUSE, J.


  /s/
EARL, J.

11