Filed 10/14/20  P. v. Thompson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072819 |
| v. | (Super.Ct.No. RCR11884) |
| JEFFREY LEROY THOMPSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

In 1987, after a jury trial, defendant and appellant Jeffrey Leroy Thompson was convicted of first degree felony murder and robbery. (Pen. Code, §§ 189, 211).[1] In 2019, defendant filed a petition for resentencing pursuant to newly enacted section 1170.95, which the trial court denied without prejudice. Defendant appealed.

On appeal, defendant argues that his petition was improperly denied because he made a prima facie showing for relief under section 1170.95, the court erred in failing to provide counsel prior to hearing the petition, the court erred by holding a hearing without defendant present, and the court erred by failing to allow defendant to file a reply brief. Defendant also argues that the abstract of judgment must be amended to correct an error. We reverse the trial court's denial of defendant's petition and remand with directions to appoint counsel and permit briefing on whether defendant has made a prima facie showing for entitlement to relief. We also order that the trial court amend the abstract of judgment to correct the asserted error.

# II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Thompson had been employed at a Texaco gas station in Upland for several months. Five days before the crimes, he was suspended from employment. A few days later, he appeared at the station while the victim and another attendant were on duty.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The Factual and Procedural Background is taken from this court's nonpublished 1989 opinion affirming defendant's judgment of conviction. (*People v. Thompson* (Sept. 12, 1989, E004443) [nonpubl. opn.].)

2

Thompson appeared to be angry about the suspension and he put his fist through a window in the service bay area. He threatened to break the manager's nose and either rob or "rip-off" the station. He instructed the victim to tell the manager that a ladder had fallen and that was how the window got broken. The manager, however, discovered the truth and fired Thompson. Thompson then called the other attendant and "thanked" him for "squealing" on him. While at the station, Thompson had also registered his anger with the victim for telling a female acquaintance of Thompson's that Thompson had been suspended. Shortly after being fired, Thompson returned to the station and once again expressed his anger over his termination. He threatened to "kick [the manager's] ass."

During the evening before the crimes, Thompson, Barclay, and Crutcher were together at a pizza parlor. They told friends there that they intended to go to Kentucky and Florida. Thompson and Barclay handled a switchblade knife which Thompson had had the previous week. Crutcher displayed a gun he had taken from his mother at the condo they shared. All three were very short of money. Barclay was angry because of a fight he had been in with his cousin.

At one point, Thompson and Barclay said they were going to the Texaco station for cigarettes. Thompson later appeared at the station where he filled his tank and purchased soft drinks and cigarettes. Crutcher went to the condo, packed his belongings into the back of his pickup truck and returned to the pizza parlor parking lot. The other two also put their belongings into Crutcher's truck. After the parlor closed, all three stood outside in the lot talking with Tawna Maxwell and a male acquaintance. Barclay

3

pointed the gun Crutcher had had earlier at Maxwell saying "Stick 'em up." She saw the switchblade knife inside the truck.

The three later departed in Crutcher's truck as Maxwell and the male friend followed in their cars. They arrived at the station where the victim was on duty. While the victim was busy at the pumps, Barclay and Crutcher helped themselves to the cigarettes kept inside the station. When they saw a passing police officer, the three left the station in the truck.

Around 2:00 a.m., a limousine driver who frequented the station pulled in and was waited on by Thompson, whom he recognized from previous visits. Approximately one hour later, another customer drove into the station. A man she later identified as Thompson told her that the attendant had taken a break and was not there. After noticing that a television in the station office had been turned up full volume, she left.

Approximately 15 minutes later, another customer entered the station. When no one came to wait on him, he entered the station's office. He noticed drawers had been opened. Fearing something was wrong, he went to another station across the street and asked the attendant there to call the police. A little more than an hour passed when another customer came into the station and was unable to locate the attendant. After waiting some time, still another customer arrived and the latter found the victim's body in the back room. The victim had been beaten with the leg of a chair and possibly with another object, had been stabbed with a knife which was consistent with the switchblade the defendants had the night before, and had been garroted with a wire which had been

4

turned with a ballpoint pen. His hands had been tied with a piece of cloth and he had been gagged. Shoe prints in blood on and near the victim's body were consistent with the soles of shoes worn by Barclay and found in Crutcher's truck when they were later arrested. Shoe prints in oil near the gas pumps were consistent with Thompson's shoes. Money, cigarettes, and keys were missing from the station, yet no fingerprints were left at the scene.

Several days later, the defendants were apprehended by authorities in Texas. Blood found on the jeans and shoes Barclay was wearing did not match him or the other two defendants, but did match the victim's, along with .67 percent of the population. So too did blood discovered on shoes found in the truck and on the switchblade knife which Crutcher had on him at the time of the arrest. Leather gloves found in the truck bore human blood which could have been Crutcher's or the victim's (along with 51 percent of the population) but it could not have been Barclay's or Thompson's. Packs of cigarettes and a gun were also found in the truck.

After his arrest, Crutcher admitted to his mother that he had stolen items from her home the night before the crime. He said he later pawned them because he needed the money.

A jury convicted defendant of first degree felony murder and robbery. The trial court sentenced defendant to an indeterminate term of 25 years to life in state prison for the first degree murder, and five years state prison for the robbery. The trial court stayed the five-year term pursuant to section 654.

5

Defendant appealed his judgment, and in 1989 this Court affirmed defendant's conviction.

In 2019, defendant filed a petition for resentencing pursuant to newly enacted section 1170.95. The People filed a motion to strike defendant's petition as unconstitutional and provided an informal response alleging that defendant "failed to set forth a *prima facie* case for relief." On March 21, 2019, the trial court held a hearing on defendant's petition. Defense counsel appeared on behalf of defendant, but defendant was not present. Defense counsel apparently received the case only the day before. The court formally appointed defendant counsel. The court then denied defendant's petition without prejudice, stating "that it fails to set forth anything but a bald statement that he was not a major participa[nt]." The court also stated that "if you read the appellate decision . . . even the appellate court has said he was a major participant, and it wouldn't have happened except for him." The trial court then advised defense counsel that it was "appointing you to review it and decide whether or not you want to file an additional appeal."

Defendant timely appealed.

## III. DISCUSSION

Defendant argues that the trial court improperly denied defendant's petition for resentencing because the petition stated a prima facie case and that a review on the merits would have revealed that he was entitled to relief. Defendant also argues that he was denied certain procedural rights, including that the appointment of counsel came too late

6

to allow adequate representation, that he had a right to be personally present at the hearing, and that he was not permitted to file a reply brief. The People argue that the trial court's order and the alleged procedural errors were at most harmless error.[3]

Defendant also argues that the abstract of judgment must be amended, because it incorrectly shows that the five-year prior prison term for defendant's robbery conviction was imposed rather than stayed pursuant to section 654. The People agree.

A.     Defendant's Petition Made Prima Facie Case for Eligibility Under Section 1170.95

1.     *History of Senate Bill 1437*

Senate Bill 1437 "which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722-723 (*Martinez*).)

---

[3] The People also argue that the trial court's denial of defendant's petition was not appealable because it was "without prejudice." However, our colleagues in the Fifth District recently concluded that "an order denying a petition for recall of sentence and resentencing pursuant to Penal Code section 1170.95 . . . is appealable pursuant to section 1237, subdivision (b), as an order after judgment affecting the substantial rights of the defendant." (*People v. Larios* (2019) 42 Cal.App.5th 956, 961, review granted Feb. 26, 2020, S259983.) We agree with the court in *Larios* that the denial of defendant's petition is appealable and review it accordingly.

Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161; *In re R.G.* (2019) 35 Cal.App.5th 141, 144 (*R.G.*).) "This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed ' "for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion." [Citations.]' [Citation.]" (*R.G.*, at p. 144.)

Senate Bill 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*R.G.*, *supra*, 35 Cal.App.5th at p. 144.) "Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749.)

Senate Bill 1437 also added section 1170.95, which states that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's

8

murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) An offender may file a section 1170.95 petition if he or she was prosecuted under a felony murder or natural and probable consequences theory, but under amended sections 188 or 189, could not have been convicted of first or second degree murder. (§ 1170.95, subd. (a).)

### 2. *Process for Review of a Petition Under Section 1170.95*

The trial court's review of a petition under section 1170.95 occurs in several phases. A petitioner must meet the standards of each before proceeding to an evidentiary hearing on the full merits of the petition. First, the trial court determines whether the petition is complete as defined in subdivision (b)—that is, whether it contains the minimum necessary components the statute requires of a petition. If the petition is facially adequate, the trial court next determines whether "the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If so, the trial court appoints counsel (if requested by the petitioner), and may extend the briefing schedule set by the statute.[4] The statutory

---

[4] When petitioner is entitled to have counsel appointed is currently under review by our Supreme Court. (*People v. Verdugo* (2020) 44 Cal.App.5th 320 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted Mar. 18, 2020, S260598; *People v. Cornelius* (2020) 44 Cal.App.5th 54 (*Cornelius*), review granted Mar. 18, 2020, S260410.) However, pending further guidance from our Supreme Court, we agree with *Verdugo*, *Cornelius*, and *Lewis* and conclude that counsel need not be appointed until after a trial court concludes that the petitioner has made a prima facie showing that he or she falls within the provisions of the statute. (*Verdugo*, at pp. 332-333; *Lewis*, at p. 1140; *Cornelius*, at p. 58.) We also agree with *Lewis* and *Verdugo*'s broader conclusion that 1170.95 is laid out in chronological order, and that events under it proceed in the order they are enumerated in the statute. (*Lewis*, at p. 1140; *Verdugo*, at p. 332.)

deadlines require that the People file any opposition to the petition up to 60 days after the petition was served, and the defendant may serve any reply up to 30 days after the People's opposition is served. (§ 1170.95, subd. (c).) After briefing, the court determines whether the petitioner has stated a prima facie case that he or she is entitled to relief. If so, the court must issue an order to show cause and hold a hearing to determine whether to re-sentence the petitioner. (§ 1170.95, subds. (c)-(d).)

Section 1170.95, subdivision (c), thus requires the trial court to make two prima facie assessments. "The first is whether the petitioner has made a prima facie showing of eligibility for relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95(a)—namely he or she (1) was charged with murder 'under a theory of felony murder or murder under the natural and probable consequences doctrine,' (2) was convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976 (*Drayton*), italics omitted.) "If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the 'second' inquiry into the prima facie showing under section 1170.95(c). [Citation.] In this second step, the trial [court] considers whether the petitioner has made a prima facie showing of entitlement to (rather than eligibility for) relief." (*Id.* at p. 976, italics omitted.) Only after these first two prima facie review phases are complete, and the court

10

is satisfied that the petition is meritorious under these standards, does it then issue an order to show cause and hold a hearing on the petition's merits.

### 3. Defendant Stated a Prima Facie Case for Eligibility

Because the trial court in this case denied defendant's petition before ordering briefing, and arguably before appointing counsel, the record indicates that the trial court denied the petition on the basis that defendant did not meet the first prima facie showing of eligibility for relief. Had the trial court concluded that defendant made a prima facie showing of eligibility for relief, it would have been required to provide defendant with time to file formal briefing at a minimum. This did not happen. Thus, we review whether the trial court erred in implicitly finding that defendant failed to state a prima facie case that he fell within the provisions of the section.

The appropriate standard for review of the denial of a petition under section 1170.95 is addressed in *Drayton*, *supra*, 47 Cal.App.5th at pp. 980-981. As that case notes, "[a]ppellate review of petitions in similar context, such as Proposition 47, typically involves multiple standards of review." (*Ibid.*) In Proposition 47 cases, we review the trial court's decision under a mixed question of law and fact standard. Thus, " '[w]here an appeal involves the interpretation of a statute . . . , the issue on appeal is a legal one, which we review de novo. Where the trial court applies disputed facts to such a statute, we review the factual findings for substantial evidence and the application of those facts to the statute de novo. [Citation.] " '[A]n order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and

11

error must be affirmatively shown.' " [Citation.] In addition, we must " 'view the record in the light most favorable to the trial court's ruling.' " ' " (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095-1096 (*Sledge*).)

Here, the trial court never acted as a factfinder. It simply reviewed the petition and record of conviction to determine whether petitioner made a prima facie showing of eligibility for relief. Therefore, we review the trial court's determination that defendant failed to make a prima facie showing of eligibility for relief de novo.

Next, we turn to what kind of review section 1170.95 requires. The statute does not set out a precise standard for reviewing whether a petition states a prima facie case that the petitioner falls within the provisions of the statute. However, given that this review is statutorily distinct from the facial sufficiency required under section 1170.95, subdivision (b), and the more substantive prima facie analysis under subdivision (c), we can conclude that the relevant standard is somewhere between those two.

We conclude that reviewing a petition to determine whether it states a prima facie case for statutory eligibility is analogous to a preliminary review of statutory eligibility for resentencing under Propositions 36 and 47.[5] Under both these types of review, the petitioner must first "establish his or her *initial eligibility* for relief," after which the

---

[5] This was the conclusion our Second District colleagues reached in *Verdugo*, *supra*, 44 Cal.App.5th at p. 329. This case is currently under review by our Supreme Court, though the relevant analysis is not under review. (See *People v. Lewis*, S260598, Supreme Ct. Mins., Mar. 18, 2020 [requesting briefing and argument only on whether superior courts can "consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief" under section 1170.95 and when the right to appointed counsel arises under the same].)

prosecution gets the opportunity to show that the petitioner is ineligible for relief. (*Sledge*, *supra*, 7 Cal.App.5th at p. 1094.) In both cases, an evidentiary hearing is not necessary to resolve the question of eligibility for relief, but " '[a]n evidentiary hearing is required if . . . there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.' " (*Id.* at p. 1095, quoting California Rules of Court, rule 4.551(f).)

This procedure is very similar to the statutory procedure set out in section 1170.95. All three require a trial court to preliminarily determine whether the petition sets out a prima facie case of eligibility for relief, an opportunity for the parties to dispute eligibility, and the opportunity for an evidentiary hearing if the court determines that the petitioner has established a prima facie case that he or she is both eligible for and entitled to relief.

When performing the preliminary review for statutory eligibility under Propositions 36 and 47—and, analogously, under section 1170.95—the " 'court's role . . . is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner.' " (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1178 (*Torres*).) Thus, our review must be whether the trial court erred in finding that defendant was not eligible for relief as a matter of law because he was a major participant in the underlying felony.

In many cases, where a defendant is petitioning the court under section 1170.95, there has been a prior true finding on a special circumstances allegation that defendant

13

was a major participant and acted with reckless indifference to human life. (See, e.g. *People v. Smith* (2020) 49 Cal.App.5th 85.) As our colleagues in the Second District recently recognized, even such a true finding is not enough, on its own, to allow a trial court to conclude a petitioner is not entitled to relief under section 1170.95 where the finding occurred prior to our Supreme Court's recent clarification of what those terms mean. In *Torres*, *supra*, 46 Cal.App.5th at p. 1178 the trial court denied a petition under section 1170.95 because "the existence of the jury's 2001 robbery murder special circumstance findings alone established that Torres was 'a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2' [citation], as a matter of law, thereby barring him from relief." The court in *Torres* disagreed with the trial court's holding. It found that "[a]lthough the jury's special circumstances findings rendered in 2001 indicate that the jury concluded Torres was a 'major participant' who acted with 'reckless indifference to human life' in the murders . . . , those jury findings alone do not preclude Torres from showing today that he could not be convicted of first or second degree murder as redefined by Senate Bill 1437." (*Torres*, at p. 1179.) This conclusion is based upon the fact that our Supreme Court has since narrowed the definition of what it means to be a major participant or to act with reckless indifference to human life. (See *People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522; *Torres*, at p. 1179.)

Defendant has an even stronger argument for error here. In contrast to *Torres*, the record in this case does not show that the jury made any findings regarding special

14

circumstances against defendant. This means that there is nothing establishing that defendant was a major participant as a matter of law at the time of his conviction, let alone under the law as it exists now. It is true our review of defendant's case on appeal found that "if it weren't for [defendant], this robbery and resulting murder never would have occurred," that "[defendant] was the only one of the three that had a motive to victimize this particular gas station and individual[,] . . . was aware his companions were armed," and "[h]is acting as the station's attendant allowed them the time and freedom they needed to complete the crimes." However, while this makes clear defendant has an uphill battle arguing he was not a major participant, it is not legally conclusive and does not mean defendant is ineligible for relief under section 1170.95 as a matter of law.

Accordingly, we conclude the trial court erred when it denied defendant's petition for failing to state a prima facie case he falls within the provisions of section 1170.95.[6] Reviewing de novo, we find defendant met the three criteria necessary to establish a prima facie case for eligibility under section 1170.95; that is, his petition alleges he was charged with murder under a vicarious liability theory, he was convicted of first or second degree murder, and he can no longer be convicted of first or second degree murder. Taking these allegations as true, there is nothing in the record to establish that defendant is not eligible for relief as a matter of law. Accordingly, we remand to the trial court with directions to proceed to the second prima facie review phase, which requires

---

[6] Because we conclude that the trial court erred by denying defendant's petition, we do not address defendant's arguments regarding procedural error.

15

the trial court to appoint defense counsel and permit briefing from both parties and then determine whether or not defendant is entitled to relief.

B.      The Abstract of Judgment Must Be Amended

Next, defendant argues that the abstract of judgment incorrectly records that defendant's robbery conviction was for first degree, rather than second.  He also points out that the trial court stayed the sentence for his second degree robbery conviction, but the abstracts of judgment from 1990 and 1991 say the sentence was for first degree robbery.  The People agree these errors should be corrected.  We agree with the parties.

Defendant was charged and convicted of robbery, without a degree specified. When the degree of the robbery is not specified, the crime is second degree robbery. (*People v. Anderson* (1975) 50 Cal.App.3d 325, 327; § 1157.)  The court imposed but stayed a five-year term pursuant to section 654.  However, amended abstracts of judgment from 1990 and 1991 indicate that defendant was convicted of first degree robbery, and is to serve the five-year term consecutively.  That is incorrect.

Therefore, we exercise our independent authority and order the trial court to correct the abstract of judgment to reflect that defendant's robbery conviction was for second degree robbery, and that the sentence was imposed but stayed.

## IV.  DISPOSITION

The order denying defendant's petition to vacate his murder conviction and for resentencing is reversed.  The matter is remanded to the superior court with directions to appoint defendant counsel, permit the People to file any opposition to defendant's

16

petition within 60 days of the trial court's order, and permit defendant to file any reply to the People's opposition within 30 days after service of the People's opposition. The trial court must then consider whether defendant has made a prima facie case for entitlement to relief. We also direct the trial court to correct the abstract of judgment to reflect that defendant's robbery conviction was for second degree robbery, and that the sentence was imposed but stayed. The court is further ordered to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


MILLER
Acting P. J.


RAPHAEL
J.

17