Filed 7/20/21  P. v. Gallardo CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308954 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA091171) |
| v. | |
| CARLOS GALLARDO, | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General for Plaintiff and Respondent.

————————————

Carlos Gallardo appeals from the postjudgment order summarily denying his petition for resentencing under Penal Code section 1170.95[1] as to his prior convictions of attempted murder and voluntary manslaughter. Gallardo contends the superior court erred in summarily denying his petition because section 1170.95 applies to both offenses. He also argues the court's denial of his petition violated his right to equal protection under the federal and California Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7) and his right to substantive due process. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Convictions and Petition for Resentencing*

On February 19, 2009 Gallardo pleaded guilty to attempted murder (§§ 187, subd. (a), 664) and voluntary manslaughter (§ 192, subd. (a)), and he admitted the gang enhancement allegations (§186.22, subd. (b)(1)(C)) were true. The trial court sentenced him to an aggregate state prison term of 26 years eight months.

On June 5, 2019 Gallardo, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his attempted murder and voluntary manslaughter convictions and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. On July 19 the trial court appointed counsel for Gallardo.[2] The

---

[1]    All statutory references are to the Penal Code.

[2]    Judge Dewey Lawes Falcone presided over the plea and sentencing. Because Judge Falcone is deceased, Judge Joseph R.

2

People filed an opposition, and counsel for Gallardo filed a reply. The trial court summarily denied the petition on the basis Gallardo was ineligible for resentencing as a matter of law because he was not convicted of murder.

Gallardo timely appealed.

## DISCUSSION

A.    *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill 1437), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder through the amendment of sections 188 and 189.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848.)  Under section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory may petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4; see *Gentile*, at p. 847.)

If the section 1170.95 petition contains all the required information, section 1170.95, subdivision (c), prescribes a procedure for the court to determine whether to issue an order to show cause and hold an evidentiary hearing to consider if the murder conviction should be vacated and the petitioner resentenced on any remaining counts.  As we explained in *People*

Porras initially presided over the matter.  The matter was then transferred to Judge Tsao, who decided Gallardo's petition for resentencing.

3

*v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted March 18, 2020, S260493, section 1170.95, subdivision (c), provides for the court's review to proceed in two steps: "'one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95— that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (Accord, *People v. DeHuff* (2021) 63 Cal.App.5th 428, 436-437; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 237, review granted Mar. 10, 2021, S266652; *People v. Perez* (2020) 54 Cal.App.5th 896, 903, review granted Dec. 9, 2020, S265254; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)[3]

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under section 1170.95, subdivision (c), "[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit

---

[3]    The Supreme Court in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598, granted review on the following questions:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]"

4

factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. . . . However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980; accord, *People v. Perez, supra*, 54 Cal.App.5th at pp. 903-904, review granted.)

B.    *The Trial Court Did Not Err in Denying Gallardo's Petition for Resentencing*

1.    *Section 1170.95 does not apply to convictions of attempted murder, nor does its inapplicability to attempted murder convictions violate equal protection principles*

Gallardo contends that the Legislature intended Senate Bill 1437 and its resentencing provision in section 1170.95 to apply to convictions of attempted murder. However, we concluded in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1104-1105 (*Lopez*), review granted November 13, 2019, S258175, that Senate Bill No. 1437 does do not provide relief for defendants convicted of attempted murder. (Accord, *People v. Love* (2020) 55 Cal.App.5th 273, 279, review granted Dec. 16, 2020, S265445.) Other courts have disagreed with our conclusion in *Lopez* that Senate Bill 1437 did not eliminate the natural and probable consequences doctrine as a basis for accomplice liability for attempted murder. (See, e.g., *People v. Larios* (2019) 42 Cal.App.5th 956, 964-968, review granted Feb. 26, 2020,

5

S259983); *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1012-1016, review granted March 11, 2020, S259948.) However, in light of the plain language of section 1170.95, by its terms applying to "[a] person convicted of felony murder or murder under a natural and probable consequences theory" (§ 1170.95, subd. (a)), the appellate courts have consistently held that section 1170.95 does not provide relief to a petitioner seeking relief from a final conviction of attempted murder. (See, e.g., *People v. Harris* (2021) 60 Cal.App.5th 557, 566, review granted Apr. 21, 2021, S267529 (*Harris*) ["We join the other appellate courts that have concluded that relief under section 1170.95 is not available to those convicted of attempted murder."]; *Love*, at p. 292 ["Thus, even if Senate Bill 1437 reached attempted murder convictions on a prospective basis, it does not provide for retroactive relief for such convictions whether final or not."]; *Larios*, at p. 969 ["No language in section 1170.95 references relief to persons convicted of attempted murder."].)

Gallardo contends in the alternative that any exclusion of attempted murder from the relief provided by section 1170.95 would violate equal protection principles. "The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment. [Citation.] '"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citation.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'" (*People v. Morales* (2016) 63 Cal.4th 399, 408; accord, *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; *Lopez, supra*, 38 Cal.App.5th at p. 1111, review

granted.)  We rejected an equal protection challenge to Senate Bill 1437 with respect to attempted murder in *Lopez*, at pages 1109 to 1110, concluding persons convicted of murder and attempted murder are not similarly situated for purposes of Senate Bill 1437 because they are charged with separate crimes with different penal consequences.  We also found there was a rational basis for excluding offenders in attempted murder cases from Senate Bill 1437, including the need to address the greater gap in culpability inherent in a murder conviction based on aiding and abetting liability.  (*Id*. at pp. 1111-1112; accord, *Harris, supra*, 60 Cal.App.5th at p. 570, review granted ["Assuming for the sake of argument that all these offenders are similarly situated for purposes of section 1170.95, construing section 1170.95 to apply only to murder convictions does not violate equal protection, because we can conceive of at least one rational reason for the Legislature to limit relief under section 1170.95 to those convicted of murder."]; *Love, supra*, 55 Cal.App.5th at p. 288, review granted ["Even if we assume for the sake of argument that persons convicted of murder and persons convicted of attempted murder are similarly situated [citation], construing Senate Bill 1437 to reach murder but not attempted murder does not violate equal protection."].)  Gallardo has presented no persuasive reason for us to depart from our decision in *Lopez*.

7

2. *Section 1170.95 does not apply to convictions of voluntary manslaughter, nor does its inapplicability to voluntary manslaughter convictions violate equal protection principles*

Gallardo argues section 1170.95 provides relief for his conviction of voluntary manslaughter because he accepted a plea offer in lieu of a trial at which he could have been convicted of felony murder or murder based on the natural and probable consequences doctrine. Gallardo's contention is contrary to the plain language of the statute and its legislative history.

"Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *In re A.N.* (2020) 9 Cal.5th 343, 351-352.) "'"We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."' [Citation.] 'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.'" (*In re A.N.*, at pp. 351-352; accord, *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 189 ["We consider the provisions' language in its 'broader statutory context' and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion. [Citation.] If an ambiguity remains after this preliminary textual analysis, we

8

may consider extrinsic sources such as legislative history and contemporaneous administrative construction."].)

Nowhere in section 1170.95 is the crime of voluntary manslaughter mentioned, and, as discussed, subdivision (a) provides a remedy only for "[a] person convicted of felony murder or murder under a natural and probable consequences theory." As the Court of Appeal observed in *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*), in concluding section 1170.95 does not provide relief for convictions of voluntary manslaughter where a defendant charged with murder enters a no contest plea to voluntary manslaughter, "[H]ere the language of the statute unequivocally applies to murder convictions.  There is no reference to the crime of voluntary manslaughter.  To be eligible to file a petition under section 1170.95, a defendant must have a first or second degree murder conviction.  The plain language of the statute is explicit; its scope is limited to murder convictions."  (Accord, *Harris, supra*, 60 Cal.App.5th at p. 566, review granted ["Because Harris was convicted of . . . voluntary manslaughter and not murder, he consequently is not eligible for relief under section 1170.95."]; *People v. Paige* (2020) 51 Cal.App.5th 194, 204 (*Paige*) ["[W]e agree with our colleagues in the Second, Fourth and Fifth Districts holding that defendants charged with felony murder but convicted of voluntary manslaughter pursuant to a plea agreement are not eligible for relief under section 1170.95."]; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 918 (*Sanchez*) ["By its plain language, section 1170.95 thus makes resentencing relief available only to qualifying persons convicted of murder."]; *People v. Turner* (2020) 45 Cal.App.5th 428, 435-436 (*Turner*) ["Relying on the clear language of the statute, courts including

9

ours have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter."]; *People v. Flores* (2020) 44 Cal.App.5th 985, 993 ["Section 1170.95 does not mention, and thus does not provide relief to, persons convicted of manslaughter, which, 'while a lesser included offense of murder, is clearly a separate offense . . . .'"].)

Gallardo's argument that the reference in section 1170.95, subdivision (a)(2), to the defendant's acceptance of "a plea offer in lieu of trial at which the petitioner could be convicted of first degree or second degree murder" means a defendant is eligible for relief if he or she accepted a plea offer for voluntary manslaughter in lieu of murder, is contrary to the plain language of section 1170.95, subdivision (a). As the Court of Appeal in *Paige, supra*, 51 Cal.App.5th at page 202 explained, "[R]ead in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder. The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute—who may seek relief and what they may seek. The 'who' is '[a] person *convicted of felony murder or murder under a natural and probable consequences theory*' and the 'what' is the opportunity to 'file a petition with the court . . . *to have the petitioner's murder conviction vacated*.' (Italics added.) The provision on which [defendant] relies, section 1170.95, subdivision (a)(2), is one of three conditions—*all* of which must *also* apply before the person convicted of felony murder or natural and probable consequences murder may seek relief under section 1170.95. Given the structure of the statute and the language in the first paragraph of section 1170.95,

10

subdivision (a), the reference to a person who 'accepted a plea offer' in subdivision (a)(2) must necessarily mean a person who accepted a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges." (Accord, *Sanchez, supra*, 48 Cal.App.5th at pp. 918-919; *Turner, supra*, 45 Cal.App.5th at p. 438.)

Further, contrary to Gallardo's argument, section 1170.95, subdivision (a)(2)'s reference to a defendant's acceptance of a plea is not rendered superfluous under our construction of section 1170.95 to apply only to murder convictions. "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply. Regardless of whether that clarification was necessary, '"the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision."' [Citation.] Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage." (*Sanchez, supra*, 48 Cal.App.5th at p. 919.) Had the legislature intended to include voluntary manslaughter within the scope of section 1170.95, it could have chosen to do so; we do not add language to an unambiguous statute.

The legislative history of section 1170.95 supports this construction of the statute. "First, the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory. Second, nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first- or second-degree murder. One report based cost estimates on the number

11

of inmates serving terms for first or second-degree murder. Finally, the petitioning procedure was restricted by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95." (*Turner, supra*, 45 Cal.App.5th at p. 438; accord, *Paige, supra*, 51 Cal.App.5th at p. 203.)

The fact a defendant who is convicted of murder may be eligible to obtain relief under section 1170.95, but a defendant who pleaded guilty of voluntary manslaughter instead of facing a murder charge cannot, does not lead to an absurd result, as argued by Gallardo. We agree with the analysis of the court in *Turner, supra*, 45 Cal.App.5th at page 439, "The punishment for manslaughter is already less than that imposed for first- or second-degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and 2, 3, or 4 years for involuntary manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors.  [Citations.]  Providing relief solely to defendants convicted of *murder* under a felony-murder or natural-and-probable consequences theory does not conflict with the Legislature's stated objective to make 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.'" (Accord, *Paige, supra*, 51 Cal.App.5th at p. 204.)

Gallardo's reliance on *In re R.G.* (2019) 35 Cal.App.5th 141 and *People v. Page* (2017) 3 Cal.5th 1175 (*Page*) is misplaced.  In

*In re R.G.*, the same court that decided *Cervantes* concluded section 1170.95's petitioning procedures apply to juvenile offenders, even though Senate Bill 1437 uses terminology used in adult criminal proceedings and the statute does not reference juvenile offenders. (*In re R.G.*, at pp. 144, 146-147.) However, the court's holding was based on its analysis of juvenile law, including that Senate Bill 1437's amendment to section 188 to limit reliance on the natural and probable consequences doctrine applies to juvenile offenders pursuant to Welfare and Institutions Code section 602. (*In re R.G.*, at pp. 148-151; see *People v. Munoz* (2019) 39 Cal.App.5th 738, 756, fn. 19 [The holding in *In re R.G.* "was premised on several considerations specific to the juvenile law, including, inter alia, that provisions of the Welfare and Institutions Code specifically contemplate incorporating substantive criminal laws into juvenile proceedings, and excluding juveniles from . . . section 1170.95's reach could run afoul of the requirement that a juvenile may not be held in physical confinement for a period exceeding that which could be imposed upon an adult convicted of the same offense"].)

In *Page, supra*, 3 Cal.5th at page 1180 the Supreme Court held a defendant who is convicted of unlawfully driving or taking a vehicle (§ 10851) may be eligible for resentencing under Proposition 47, the Safe Neighborhoods and Schools Act of 2014 (§ 1170.18), if the defendant was convicted of the offense based on his or her theft of the vehicle, which would qualify as theft of property under section 490.2 if the vehicle was worth $950 or less. The *Page* court's analysis was based on the language of Proposition 47, the voters' instructions, and the proposition's legislative history. (*Page*, at pp 1183-1187.) Neither *R.G.* nor

13

*Page* addressed whether section 1170.95 applies to convictions for manslaughter.

Gallardo also contends section 1170.95 violates equal protection principles because it treats defendants convicted of voluntary manslaughter pursuant to a plea differently from those convicted of murder. We agree with the Courts of Appeal that have rejected an equal protection challenge on this basis. (See *Sanchez, supra*, 48 Cal.App.5th at p. 920; *Paige, supra*, 51 Cal.App.5th at p. 206; *Cervantes*, *supra*, 44 Cal.App.5th at p. 888.)

Although Gallardo contends those convicted of voluntary manslaughter and murder are similarly situated, it is axiomatic that "'offenders who commit different crimes are not similarly situated for equal protection purposes.'" (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888; accord, *Paige, supra*, 51 Cal.App.5th at p. 206; *Sanchez, supra*, 48 Cal.App.5th at p. 920.) Because Gallardo was "'convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment,'" he "'has failed to establish the threshold requirement of an equal protection claim: disparate treatment of similarly situated persons.'" (*Sanchez*, at p. 920; accord, *Paige*, at p. 205; *Cervantes*, at p. 888.)

Even if those convicted of manslaughter and murder were similarly situated for purposes of section 1170.95, we agree with the reasoning of the courts in *Paige, supra*, 51 Cal.App.5th at page 205, *Sanchez, supra*, 48 Cal.App.5th at page 921, and *Cervantes*, *supra*, 44 Cal.App.5th at page 888 that an equal protection challenge still fails. "[I]f the classification does not involve a suspect class, legislation is presumed to be valid under the equal protection clause if the statutory classification is

14

rationally related to a legitimate state interest." (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483; see *Paige,* at p. 205 [applying rational basis review in deciding equal protection challenge]; *Sanchez*, at p. 921 [same]; *Cervantes*, at p. 888 [same]; *People v. Lopez, supra*, 38 Cal.App.5th at p. 1111 ["We . . . apply rational basis review to determine whether the Legislature's limitation of the ameliorative provisions of Senate Bill 1437 was justified."].)

As the *Sanchez* court explained, "[T]he Legislature could have reasonably concluded 'that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the [natural and probable consequences theory] could be excessive and reform was needed only there.' [Citation.] "The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed."' [Citation.] [¶] We reject [defendant's] assertion that the distinction was not reasonable in light of the Legislature's intent to save money on the costs of incarceration. Whether expanding section 1170.95 to include those who pled guilty to voluntary manslaughter would result in more savings is irrelevant. That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make. [Citation.] It does not demonstrate that it was irrational to distinguish between those convicted of murder by plea and those convicted of voluntary manslaughter by plea." (*Sanchez, supra*,

15

48 Cal.App.5th at p. 921; accord, *Paige, supra*, 51 Cal.App.5th at p. 206; *Cervantes*, *supra*, 44 Cal.App.5th at pp. 888-889.)[4]

We agree with our colleagues in *Paige, supra*, 51 Cal.App.5th at p. 206, *Sanchez, supra*, 48 Cal.App.5th at p. 920, and *Cervantes*, *supra*, 44 Cal.App.5th at p. 888, and do not find Gallardo's arguments to the contrary persuasive.

## DISPOSITION

The order denying Gallardo's petition for resentencing under section 1170.95 is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[4] We likewise reject Gallardo's argument he was denied substantive due process. "'[S]ubstantive due process requires a rational relationship between the objectives of a legislative enactment and the methods chosen to achieve those objectives.' [Citation.] Here there was such a relationship. The legislative goal was to eliminate the sentencing disparity caused by the felony murder rule [and natural and probable consequences doctrine]. That goal was properly achieved by the section 1170.95 petition procedure to vacate those murder convictions." (*Cervantes, supra*, 44 Cal.App.5th at p. 889.)

16