Filed 6/3/22  P. v. Geise CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD JOHN GEISE, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B312016<br>(Super. Ct. No. 2001019839)<br>(Ventura County) |

Richard John Geise, Jr., appeals from the trial court's order denying his petition for Penal Code[1] section 1170.95 resentencing.  He contends the court erred when it:  (1) determined that prosecutors proved he is ineligible for resentencing, and (2) considered the trial judge's comments about the evidence when making that determination.  We affirm.

---

[1] Statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL HISTORY
### *The Central Market shooting*

Toni Manzetti had a job repossessing cars in Ventura. Geise sometimes took the repossessed cars to auction for her. Sam Patterson was a friend of Manzetti. Alfonso Delgado, Geise's cousin, was a friend of Patterson.

On April 4, 2001, Manzetti repossessed a white Toyota Corolla and a gray Chrysler LeBaron. She lent Geise the Corolla to drive until he could take it to the next auction. She was going to lend the LeBaron to another friend, but the car was not where she had parked it when the friend arrived to borrow it on April 6.

At around noon on April 6, Geise left a Ventura motel carrying a blue duffle bag with a camouflage vest inside. He told his girlfriend, Jeanette Barsch, that he was going to make some money. His cousin Delgado was with him. The two drove away in the white Corolla.

Around 12:45 p.m., one of Manzetti's neighbors noticed a white car parked outside on the street. A gray LeBaron pulled up, and the driver of the white car got into its passenger seat. The LeBaron then started to drive off, but quickly stopped. Its driver got out, opened one of the white car's doors, and took out a blue duffle bag. The man then got back into the LeBaron and drove away.

Fifteen minutes later, two masked men wearing camouflage vests entered Central Market, located a few blocks down the street from Manzetti's apartment. They demanded money. When a clerk reached for a bag, both of the masked men started shooting. Two clerks were injured, and a third was killed.

2

The masked men fled the market, got into the gray LeBaron, and drove away. When police responded, they found four expended shell casings from a .45-caliber Winchester, and a fifth from a .40-caliber Smith & Wesson.

A few minutes after the shooting, Manzetti heard tires screeching and saw a car drive into the parking area behind her apartment. Delgado then came inside. He seemed upset, and Patterson spoke with him privately. Manzetti looked outside and saw that the LeBaron was parked outside her apartment again.

The next day, police arrived at Geise's motel room with a search warrant and found a black leather jacket with a .40-caliber bullet in the pocket, camouflage bulletproof vest, and mask. They also found two boxes of .40-caliber ammunition and a loaded .40-caliber Smith & Wesson. A tool mark expert determined that the .40-caliber casing found at Central Market had been fired from that gun.

Police arrested Geise. While in custody, Geise wrote a note to Barsch: "Baby . . . try and remember everything we did yesterday. We didn't go anywhere, except I went to In-N-Out for food. They said I was in the east with [Delgado, but] . . . that's not true. I have been in my room all day." When questioned on his whereabouts during the Central Market shooting, Geise told police that he had gone to Magic Mountain with his ex-wife and son. He later changed his story and said that he met his ex-wife and son around 12:30 p.m. on April 6 and visited with them for about 45 minutes.

Barsch told police that she had seen Geise with a gun several times. She thought that the gun found in their motel room was the same gun she had seen him with previously. She

3

also thought that the jacket, vest, and mask police found in the room belonged to Geise.

Barsch said that on the morning of April 7 she asked Geise why anyone would want to rob Central Market. He replied that the market had cash on hand on Fridays to cash paychecks. April 6 was a Friday.

A few weeks after the shooting, Patterson told his father that he was "going to prison for murder." He denied that it was in connection with the Central Market shooting. He later told a friend's sister that he had committed that shooting, but then told her not to believe everything she heard.

Police shot and killed Delgado in May. Patterson died of a drug overdose in August.

*Trial proceedings*

The prosecution charged Geise with murder (§ 187, subd. (a)), two counts of attempted murder (§§ 664/187, subd. (a)), attempted robbery (§§ 664/211), commercial burglary (then-§ 459), felon in possession of a firearm (then-§ 12021, subd. (a)(1)), and conspiracy to commit robbery (§ 182, subd. (a)(1)).[2] It also alleged the felony-murder special circumstance that Geise committed murder during a robbery or burglary (§ 190.2, subd. (a)(17)(A) & (G)), and that he personally used and discharged a firearm when he committed his crimes (§ 12022.5, subd. (a), 12022.53, subds. (b), (c) & (d)).

At trial, Geise testified that he was staying at a Ventura motel with Barsch on the day of the Central Market shooting. He slept until about 11:00 a.m. Shortly thereafter, Jill

---

[2] Geise was also charged with additional offenses, but those are not relevant to this appeal. (See *Geise I, supra,* 2004 WL 530727 at p. *3, fn. 2.)

4

Benny called and asked to purchase some heroin. Geise met Benny in the parking lot and sold her the drugs.

Around 12:30 or 12:45 p.m., Geise met his ex-wife in a restaurant parking lot. They visited for 30 to 45 minutes, then Geise returned to his motel room.

Around 2:30 p.m., Delgado and Patterson arrived at Geise's motel room and asked if he would make some false identification documents for them. While they were there, Patterson said that he and Delgado had committed the Central Market shooting.

Benny testified that she bought drugs from Geise in a motel parking lot on the day of the Central Market shooting. Benny's father later discovered a letter that appeared to outline how she was supposed to testify in Geise's trial. He gave the letter to defense counsel, who turned it over to the trial court. The court declared a mistrial. Prosecutors then amended the information to add a charge of suborning perjury (§ 127).

During his second trial, Geise's defense was that Delgado and Patterson were the Central Market gunmen and that his only involvement was to help them obtain false identification documents after the shooting. Geise did not testify in this trial, but the testimony from his first trial was read to the jury. Benny testified that her previous testimony about buying heroin from Geise on the day of the shooting was false.

The trial court instructed the jury on felony murder (CALJIC No. 8.21), felony murder in pursuance of a conspiracy (CALJIC No. 8.26), felony murder by an aider and abettor (CALJIC No. 8.27), and special-circumstance felony murder during the commission of a robbery or burglary (CALJIC No. 8.81.17). The court also instructed jurors that a person who aids

5

and abets a crime need not be present at the scene of the crime (CALJIC No. 3.01) and that a conspirator is liable for any offense committed by a coconspirator in furtherance of the conspiracy if that offense is a natural and probable consequence of the objective of the conspiracy, even if the conspirator was not present when the offense was committed (CALJIC No. 6.11).  It did not instruct jurors on the mental state required for a true finding on the felony-murder special-circumstance allegation (CALJIC No. 8.80.1).

During deliberations, jurors asked whether Geise could be guilty of murder if he was not at Central Market during the shooting.  The trial court directed jurors to CALJIC No. 3.01.  The jury thereafter could not reach a verdict on the attempted murder charges or make a finding on the firearm allegations, but convicted Geise of all other charges in the amended information and found true the special-circumstance allegation that he committed murder during a robbery.  The court sentenced him to life in state prison without the possibility of parole plus seven years four months.

*First appeal*

On appeal, Geise argued his murder conviction should be reversed because the instructions allowed jurors to convict him based on the theory that he participated in the robbery but was not present at the scene.  The prosecution's theory at trial was that Geise was one of the Central Market gunmen, and was thus guilty of felony murder.  During deliberations, however, the jury asked whether Geise could be "engaged" in the crime of robbery if he was not present at the scene.  This question, along with the jury's failure to reach a verdict on the attempted murder charges and its rejection of the

6

firearm allegations, showed that at least some jurors believed he was not at the scene of the shooting.

We agreed that it was reasonably probable that one or more jurors voted to convict Geise believing he was not present at the market. We nevertheless affirmed his murder conviction because jurors may rely on different theories of guilt in reaching their conclusions.

We reversed the true finding on the felony-murder special circumstance, however, because the trial court failed to instruct the jury on the mental state required to prove that allegation. None of the court's other instructions conveyed the requisite mental state to the jury, and at least one juror appeared unconvinced that Geise was the actual killer. Moreover, "the evidence of mental state [was] not so overwhelming that the juror(s) who convicted [Geise] as a non-killer would have necessarily found that he acted with the requisite intent to kill or reckless indifference to human life if [CALJIC No. 8.80.1] had been given." We vacated the sentence on Geise's murder conviction and remanded the matter to permit prosecutors to either retry the special-circumstance allegation or accept a sentence of 25 years to life in prison. Prosecutors opted for the latter.

*Initial section 1170.95 proceedings*

In January 2019, Geise filed a section 1170.95 petition alleging that he: (1) was convicted of felony murder, (2) could not be convicted of murder under the current versions of sections 188 and 189, and (3) was not the actual killer, did not aid and abet the actual killer, and was not a major participant in the Central Market shooting who acted with reckless indifference to human life. Prosecutors moved to dismiss the petition based on

7

the alleged unconstitutionality of section 1170.95.  Alternatively, they argued that Geise was a major participant in the Central Market shooting who acted with reckless indifference to human life.

The trial court appointed counsel for Geise and held a hearing.  At the hearing the court found beyond a reasonable doubt that Geise was a major participant in the attempted robbery since he was one of two gunmen inside the market.  He thus failed to make a prima facie showing that he was entitled to section 1170.95 relief.  No evidentiary hearing was conducted.

*Second appeal*

Geise appealed again, arguing that the trial court erred when it determined that he did not make a prima facie case for section 1170.95 relief.  We agreed.  The record showed that Geise could have been convicted under the felony-murder rule.  But we could not say, as a matter of law, that the evidence showed that he could be convicted of murder under the current versions of sections 188 and 189.

As we stated in Geise's first appeal, while some jurors believed that Geise was one of the gunmen in Central Market, at least one concluded he was not present.  And those who voted to convict Geise as a non-killer did not necessarily find that he acted with either the intent to kill or reckless indifference to human life.  The trial court disregarded our observations, however, and instead found that Geise was one of the gunmen in the market.  Engaging in such factfinding without conducting an evidentiary hearing was error.  We remanded with directions to hold the required hearing.

*Section 1170.95 evidentiary hearing*

On remand, the court conducted an evidentiary hearing. The parties did not submit new or additional evidence, but instead relied on their briefs, the transcripts from both trials,[3] and the clerk's transcripts. Based on that evidence, prosecutors argued that Geise was one of the two gunmen in Central Market and that he acted with both the intent to kill and reckless indifference to human life.

Geise countered that the trial court could not conclusively determine that he was one of the gunmen because at least one of the jurors did not think he was present at Central Market.

After hearing the parties' arguments, the trial court said that it understood its role at the hearing was to review the evidence and make "an independent determination" whether Geise could still be convicted of murder, a determination that was "outside" the original trial judge's findings. The court also said that it was "not bound by any comments or any findings [made] by [the trial judge]."

The court concluded that prosecutors proved beyond a reasonable doubt that Geise was the actual killer, was an aider and abettor who possessed intent to kill, and/or was a major participant in the Central Market shooting who acted with reckless indifference to human life. "[T]he only reasonable interpretation" of the evidence was that Geise was one of the two gunmen at Central Market. He had access to the vehicle used in the shooting. He possessed a gun used during the shooting and

---

[3] The parties also provided the transcript from Geise's preliminary hearing, but the trial court said that it was not relevant to its decision.

9

ammunition "a mere 18 hours after the incident." And he told a string of lies to law enforcement, which showed a consciousness of guilt. "The evidence [was] overwhelming."

## DISCUSSION

*Substantial evidence supports the trial court's denial of Geise's section 1170.95 petition*

Geise contends the trial court erred when it concluded that he is ineligible for section 1170.95 relief. We disagree.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony-murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e).) "Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [their] participation in a crime.' [Citation.]" (*In re R.G.* (2019) 35 Cal.App.5th 141, 144 (*R.G.*); see § 188, subd. (a)(3).)

Senate Bill No. 1437 "also added section 1170.95 [to the Penal Code], which permits those convicted of [felony murder] . . . to file a petition with the sentencing court to vacate [their] conviction and be resentenced." (*R.G.*, *supra*, 35 Cal.App.5th at p. 144.) When a trial court receives a properly pleaded petition, it must conduct a prima facie analysis to determine whether the petitioner is eligible for resentencing. (*People v. Lewis* (2021) 11 Cal.5th 952, 961-970.) If the petitioner makes a prima facie showing of eligibility, the court must issue an order to show cause. (§ 1170.95, subd. (c).) The court must then hold an

10

evidentiary hearing to determine whether to vacate the petitioner's murder conviction and resentence them on any remaining counts.  (*Id.*, subd. (d)(1).)

At that hearing, prosecutors bear the burden of proving, beyond a reasonable doubt, that the petitioner can still be convicted of murder under the current versions of sections 188 and 189.  (§ 1170.95, subd. (d)(3).)  They may do so by offering into evidence "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid.*)  "The [trial] court may also consider the procedural history of the case recited in any prior appellate opinion," as well as any additional evidence the petitioner or prosecutors wish to submit. (*Ibid.*)  But it may not consider hearsay evidence admitted at a preliminary hearing "unless the evidence is admissible pursuant to another exception to the hearsay rule."  (*Ibid.*)

We review the trial court's denial of Geise's section 1170.95 petition for substantial evidence.  (*People v. Garrison* (2021) 73 Cal.App.5th 735, 747.)  When undertaking this review, our duty is not to determine whether prosecutors proved "beyond a reasonable doubt that [Geise is] ineligible for resentencing, but rather [to determine] 'whether *any* rational trier of fact could have'" reached that conclusion.  (*People v. Williams* (2020) 57 Cal.App.5th 652, 663 (*Williams*).)  While we must ensure that the evidence supporting Geise's ineligibility is reasonable, credible, and of solid value, we will not reweigh evidence, resolve conflicts therein, or reappraise witness credibility.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Instead, we view the evidence "in the light most favorable to [prosecutors] and presume . . . the existence of every fact the [trial court] could reasonably have deduced from

11

the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Reversal is permitted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the finding that Geise is ineligible for section 1170.95 resentencing. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Relying on *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), Geise invites us to eschew substantial evidence review and instead independently determine whether he is eligible for section 1170.95 relief. We decline this invitation. In *Vivar*, the Supreme Court considered which standard of review applies to a ruling on a motion to withdraw a plea based on adverse immigration consequences. (*Vivar*, at pp. 523-527; see § 1473.7.) Such a motion primarily involves questions of law. (*Vivar*, at pp. 524-525.) And it can be filed only by a person who has completed their sentence, often many years after they entered their plea. (*Id.* at p. 524-526.) The court ruling on the motion thus "may never have participated in any of the underlying proceedings and must rely . . . on a cold record" (*id.* at pp. 526-527) that "consists entirely of written documents" (*id.* at p. 533). Given "the interests at stake in a section 1473.7 motion, the type of evidence on which a . . . ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence," independent review is appropriate. (*Id.* at p. 527.)

Geise's section 1170.95 petition shares some similarities with the section 1473.7 motion at issue in *Vivar*: It was filed many years after his conviction, and the court that ruled on it was not the one that presided over his murder trial. Additionally, during the proceedings on Geise's petition, the parties presented no new testimony or evidence, requiring the

12

court to make its findings based on a cold record consisting entirely of written documents.

But unlike a section 1473.7 motion, Geise's petition primarily involves questions of fact. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294.) And the *Vivar* court expressly noted that its opinion did not "disturb[] [the] familiar postulate" that "'an appellate court should defer to the factual determinations made by the trial court' *regardless of 'whether [its] rulings [were] based on oral testimony or declarations.'* [Citations.]" (*Vivar*, *supra*, 11 Cal.5th at p. 528, fn. 7, italics added.) Appellate courts have routinely followed this command when reviewing other postjudgment rulings involving questions of fact, applying substantial evidence standards to petitions for resentencing pursuant to Proposition 36 (*People v. Perez* (2018) 4 Cal.5th 1055, 1066) and Proposition 47 (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095-1096), as well as to petitions to extend state hospital commitments (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507-508). "[W]e see no reason to withhold the deference generally afforded to [the analogous] factual findings" made in a section 1170.95 proceeding, even where the court makes those findings on a cold record. (*Perez*, at p. 1066.) Substantial evidence review applies here. (*Clements*, at p. 301.)

And it supports the trial court's determination that Geise is ineligible for section 1170.95 resentencing. First, the evidence supports the court's finding that Geise was one of the shooters at Central Market: About an hour before the shooting, Geise told Barsch that he was leaving so he could make some money. He left his motel room carrying a blue duffle bag with a camouflage vest inside, and drove away in the white Corolla Manzetti had lent him. Around 12:45 p.m., a neighbor saw a

13

similar white car park on the street in front of Manzetti's apartment complex. The driver of that car got into the passenger seat of the gray LeBaron Manzetti had repossessed—a car that had not been outside when Manzetti's friend tried to borrow it 45 minutes earlier. The LeBaron's driver then got out and retrieved a blue duffle bag from the white car before driving away.

The Central Market shooting occurred a few minutes later. The shooters wore camouflage vests, similar to those found in Geise's motel room and in his duffle bag. They had on masks and jackets that were also similar to those found in the motel room. They left behind bullet casings, one of which had been fired from a gun in Geise's possession. They then fled in the LeBaron. Considered together, this physical and circumstantial evidence supports the trial court's determination that Geise was one of the Central Market shooters.

The evidence also supports the court's determination that Geise was either the actual killer or an aider and abettor who acted with the intent to kill. Geise arrived at the market knowing that it would likely have substantial cash on hand. He was armed and wearing a bulletproof vest. He acted in concert with his accomplice, both of them opening fire when one of the clerks reached for a bag. He did not try to thwart his fellow shooter's actions, but instead joined in them. He also declined to render aid to any of the victims post-shooting. Such actions suggest that Geise intended to use lethal force to rob Central Market. (See, e.g., *People v. Doolin* (2009) 45 Cal.4th 390, 433 [possession of gun and bulletproof vest probative of intent to kill]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1081-1082 [shooting from close range and failing to render aid probative of intent to kill].)

14

The lies Geise told police or had others tell on his behalf demonstrate a consciousness of guilt that reinforces this determination. He provided various accounts of his whereabouts during and after the shooting, alternately telling police that he was at Magic Mountain, visiting with his ex-wife and son, or having his cell phone repaired. He asked Barsch to provide him with an alibi, asking her to tell police that they were together at the motel during the shooting. He also asked Benny to provide him with an alibi, an act that led to a conviction for suborning perjury. It is reasonably inferred that Geise would have not taken such deceitful actions were he not one of the Central Market shooters. (See, e.g., *People v. Carrington* (2009) 47 Cal.4th 145, 188 [deceit can be indicative of intent to kill]; *People v. Hughes* (2002) 27 Cal.4th 287, 335 [deceit can show consciousness of guilt].)

Geise challenges this conclusion by noting that at least one of the jurors at his murder trial believed that he was not present during the shooting. But whether one or more *jurors* doubted that Geise was at Central Market during the shooting is not relevant here. During the section 1170.95 evidentiary hearing, prosecutors were required to prove *to the trial court* that Geise is guilty of murder under the current versions of sections 188 and 189. And on appeal, our task is to determine "'whether *any* rational trier of fact could have'" reached that same conclusion. (*Williams*, *supra*, 57 Cal.App.5th at p. 663.) That the circumstances might also be reconciled with a contrary conclusion does not warrant reversal. (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.) Substantial evidence supports the trial court's

15

determination that Geise was either the actual killer or a direct aider and abettor who acted with the intent to kill.[4]

*The trial court made an independent determination of Geise's ineligibility for resentencing*

Geise contends the trial court erred when it considered the trial judge's previous comments about the evidence of his guilt. There was no error.

While the court said that it agreed with some of the trial judge's views of the evidence, it also said that it was making "an independent determination" whether Geise could be convicted of murder under the current versions of sections 188 and 189. The court further noted that it was "not bound by any comments or any findings [made] by [the trial judge]." It then summarized the evidence and detailed how it showed, beyond a reasonable doubt, that Geise was the actual killer, an aider and abettor who acted with the intent to kill, or a major participant in the Central Market robbery who acted with reckless indifference to human life. The record thus shows that the trial court reached its conclusions independently of the trial judge, as required by section 1170.95, subdivision (d)(3). (*People v. Bush* (2016) 245 Cal.App.4th 992, 1002 [absent evidence to the contrary, appellate court presumes trial court understood and followed the law].)

---

[4] Given our conclusion, we do not consider the parties' arguments as to whether the evidence shows that Geise was a major participant who acted with reckless indifference to human life.

16

## DISPOSITION

The trial court's order denying Geise's Penal Code section 1170.95 petition for resentencing, entered April 22, 2021, is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.


PERREN, J.

17

Ferdinand Inumerable, Judge

Superior Court County of Ventura

_____

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.